Shana Lazerow (State Bar No. 195491)
Philip Huang (State Bar No. 230115)
Communities for a Better Environment
1440 Broadway Suite 701
Oakland, California 94612
Telephone: (510) 302-0430
Facsimile: (510) 302-0438
Email: slazerow@cbecal.org

Attorneys for Plaintiff
COMMUNITIES FOR A BETTER ENVIRONMENT

Robert Ukeiley (State Bar No. 90056)
Pro Hac Vice Application Pending
LAW OFFICE OF ROBERT UKEILEY
435R Chestnut Street, Suite 1
Berea, KY 40403
Telephone: (859) 986-5402
Facsimile: (859) 986-1299
Email: rukeiley@igc.org

Attorney for Plaintiffs
COMMUNITIES FOR A BETTER ENVIRONMENT,
ROCKY MOUNTAIN CLEAN AIR ACTION,
COALITION FOR A SAFE ENVIRONMENT, and
PHYSICIANS FOR SOCIAL RESPONSIBILITY-LOS ANGELES

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

COMMUNITIES FOR A BETTER ENVIRONMENT, ROCKY MOUNTAIN CLEAN AIR ACTION, COALITION FOR A SAFE ENVIRONMENT, and PHYSICIANS FOR SOCIAL RESPONSIBILITY-LOS ANGELES,

Plaintiffs,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY and STEPHEN L. JOHNSON, as Administrator of the United States Environmental Protection Agency

Defendant

Case No.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

(Federal Clean Air Act, 42 U.S.C. §§ 7401 et. seq.)

Plaintiffs Communities for a Better Environment ("CBE"), Rocky Mountain Clean Air Action, Coalition for a Safe Environment, and Physicians for Social Responsibility – Los Angeles (collectively, "Plaintiffs") by and through their counsel allege as follows:

**INTRODUCTION**

1. Through this deadline suit, Plaintiffs seek to protect public health and welfare from harm caused by carbon monoxide ("CO") by compelling defendants U.S. ENVIRONMENTAL PROTECTION AGENCY and STEVEN L. JOHNSON, Administrator of the United States Environmental Protection Agency ("EPA" or "Defendants") to fulfill their mandatory obligation to review and revise, as appropriate, antiquated CO standards. Defendants have a non-discretionary duty to review air quality criteria and the national ambient air quality standards ("NAAQS") every five years, and make any necessary revisions to protect public health and welfare. 42 U.S.C. §§ 7408, 7409. Notice of proposed rulemaking, including a summary of the factual data, methodology, and major legal interpretations and policy considerations, must be published in the Federal Register. 42 U.S.C. §§ 7408(d), 7607(d). EPA has failed to complete this mandatory review since 2000, and has not published a report that satisfies its statutory obligations since 1994. This shortcoming is particularly egregious given that multiple studies published since the last EPA review of the CO criteria and NAAQS indicate that existing standards may result in significant harm to public health. These include several studies showing that exposure to CO during pregnancy, even at levels significantly lower than the present CO NAAQS, is correlated with decreased birth weight, which puts newborn babies at risk of lifetimes of ill-health.

**JURISDICTION**

2. Plaintiffs bring this action under section 304(a)(2) of the Clean Air Act ("CAA"), 42 U.S.C. § 7604(a)(2), which authorizes citizens to bring civil actions against the EPA Administrator for failure to perform any non-discretionary CAA duty. This Court has subject matter jurisdiction over the claims for violations of the CAA set forth in this complaint pursuant to CAA section 304(a), 42 U.S.C. § 7604(a), and 28 U.S.C. § 1331 (an action for

declaratory, injunctive and other relief arising under the Constitution and laws of the United States).

**VENUE**

3. Venue in the United States District Court for the Northern District of California is proper under 28 U.S.C. § 1391(e) because defendant EPA's main office for EPA Region 9 is located in San Francisco, California. In addition, Defendant's violation of the CAA in failing to perform their non-discretionary CAA duty has caused injury to Plaintiff CBE's members by leading to improper regulation of exposure to CO throughout the Northern District of California. Furthermore, Plaintiff CBE resides in this District. No real property is involved in this action.

**INTRADISTRICT ASSIGNMENT**

4. Intradistrict assignment of this matter to the San Francisco Division of the Court is appropriate pursuant to Civil Local Rule 3-2(c) in that the main California office of the agency responsible for the events or omissions which give rise to Plaintiffs' claims (EPA failure to perform mandatory duties to review, revise, and publish notice of proposed rulemaking of CO criteria and NAAQS) is located in San Francisco County.

**THE PARTIES**

5. Communities for a Better Environment ("CBE") is a non-profit environmental health and justice advocacy organization with offices in Oakland and Huntington Park, California. CBE's mission is to achieve environmental health and justice by building grassroots power in and with communities of color and working-class communities. In pursuit of its mission, CBE works to secure clean air and reduce pollutant emissions in its members' communities. CBE strives to accomplish this by facilitating public participation in administrative decision-making processes, and by ensuring implementation of laws that protect public health and the environment, like the Clean Air Act. CBE has approximately 20,000 members, many of whom live, work, recreate and breathe the air in parts of the San Francisco Bay and Los Angeles metropolitan areas, which host disproportionate numbers of CO sources. Because CO may impact the cardiovascular and central nervous systems, as well as human

development, CBE members and their families are at increased risk of heart disease, low birth weight, and frequent respiratory illness. CBE is further concerned that the cumulative impacts of CO pollution will cause or add to existing environmental injustice in the Bay and Los Angeles areas. These interests have been, and continue to be, threatened by EPA's failure to take action to complete a thorough review of the air quality criteria and NAAQS for CO, make such revisions to these air quality criteria and NAAQS as may be appropriate, promulgate such new NAAQS as may be appropriate, and publish notice of those actions in the Federal Register.

6. Rocky Mountain Clean Air Action is a non-profit corporation with its headquarters in Denver, Colorado. Rocky Mountain Clean Air Action is actively involved in environmental advocacy as part of its mission to protect clean air in Colorado and the surrounding Rocky Mountain region for the health and sustainability of local communities. Rocky Mountain Clean Air Action members and volunteers live, work, recreate and engage in other economic activities throughout the Rocky Mountain region, and are concerned about air quality in the Rocky Mountain Region of the western United States and its effects on the health and welfare of people, plants, and animals. Rocky Mountain Clean Air Action members and volunteers are adversely affected by CO emissions. Emissions of CO increase the risk that Clean Air Action members and their families will suffer respiratory ailments, chest pains and other cardiovascular problems, and give birth to underweight or otherwise developmentally affected babies. Emissions of CO also lead to the formation of ground level ozone in the Denver metropolitan area, which takes the form of an ugly, ominous, brown cloud that covers the metropolitan area. The above described interests are adversely affected by EPA's failure to take action to complete a thorough review of the air quality criteria and NAAQS for CO, make such revisions to these air quality criteria and NAAQS as may be appropriate, promulgate such new NAAQS as may be appropriate, and publish notice of those actions in the Federal Register.

7. The Coalition For A Safe Environment ("CFASE" or "Coalition") is a community based non-profit environmental justice, public health and public safety advocacy

organization established in 2001 in Wilmington, California. CFASE is involved in reducing, eliminating and mitigating pollution, global warming and public health and safety impacts caused by various sources, including petroleum industry refineries. The Coalition recognizes that people of color, indigenous people, the poor, politically underrepresented and the economically disadvantaged have been the most negatively and significantly impacted by business industries. The Coalition's members and volunteers are adversely affected by CO emissions. Emissions of CO increase the risk that the Coalition's members and their families will suffer respiratory ailments, chest pains and other cardiovascular problems, and give birth to underweight or otherwise developmentally affected babies. Emissions of CO also lead to the formation of ground level ozone in the Los Angeles metropolitan area. The above described interests are adversely affected by EPA's failure to take action to complete a thorough review of the air quality criteria and NAAQS for CO, make such revisions to these air quality criteria and NAAQS as may be appropriate, promulgate such new NAAQS as may be appropriate, and publish notice of those actions in the Federal Register.

8. Physicians for Social Responsibility-Los Angeles (PSR-LA) works to bring together health professionals and the diverse communities of Southern California to reduce threats to public health related to environmental toxins, war and gun violence. PSR-LA was founded in 1980 as a local affiliate of the Nobel prize winning national organization, Physicians for Social Responsibility. PSR-LA is the nation's largest PSR chapter, representing the voice of over 4,000 physicians, medical professionals and concerned citizens throughout Southern California. The goals of PSR-LA's Environmental Health programs include to: improve the health of the public by reducing environmental threats to health; reduce health disparities resulting from disproportionate exposure to environmental contamination; and help build a strong environmental health and justice movement led by communities most impacted by environmental contamination. PSR-LA's members and members' patients are adversely affected by CO emissions. Emissions of CO increase the risk that PSR-LA's members and members' patients will suffer respiratory ailments, chest pains and other cardiovascular problems, and give birth to underweight or otherwise developmentally affected babies.

Emissions of CO also lead to the formation of ground level ozone in the Los Angeles metropolitan area. The above described interests are adversely affected by EPA's failure to take action to complete a thorough review of the air quality criteria and NAAQS for CO, make such revisions to these air quality criteria and NAAQS as may be appropriate, promulgate such new NAAQS as may be appropriate, and publish notice of those actions in the Federal Register.

9. As a result of the acts and omissions of Defendants alleged herein, members of each plaintiff group have suffered and will continue to suffer injuries to their health, environmental, and aesthetic interests in enjoying clean air.

10. Defendant United States Environmental Protection Agency is the agency of the United States Government responsible for administering and implementing the CAA. CAA § 301, 42 U.S.C. § 7601.

11. Defendant Steven Johnson, Administrator of EPA, is charged under CAA §109, 42 U.S.C. § 7409, with reviewing and revising the national ambient air quality criteria and is sued in his official capacity only. If ordered by the court, Mr. Johnson has the authority and ability to remedy the harm inflicted by Defendant's failure to act.

## LEGAL AND FACTUAL BACKGROUND

### Clean Air Act Requires EPA to Protect the Public from Carbon Monoxide

12. Congress explicitly recognized that air pollution creates a significant and increasingly dangerous threat to public health and welfare and passed the Clean Air Act in order to "protect and enhance" the Nation's air resources. 42 U.S.C. § 7401. Since 1971, only six air pollutants have been recognized as posing harmful wide scale health threats that warrant management by NAAQS. 42 U.S.C. § 7408; 36 Fed. Reg. 8186. CO is one of these particularly harmful pollutants.

13. Two sections of the Clean Air Act govern the establishment and revision of air quality criteria and NAAQS. Section 108, 42 U.S.C. § 7408, requires EPA to identify pollutants that "may reasonably be anticipated to endanger public health and welfare" and to issue air quality criteria for those pollutants. Section 109, 42 U.S.C. § 7409, requires EPA to

promulgate primary and secondary NAAQS for pollutants identified under section 108. Primary standards must be sufficient to protect the public health with an adequate margin of safety, while secondary standards must safeguard the public welfare. 42 U.S.C. § 7409(b).

14. EPA first set primary and secondary CO NAAQS in 1971 at nine parts per million (ppm) over an eight-hour averaging time and 35 ppm over a one-hour averaging time. 36 Fed. Reg. 8186 (April 30, 1971). EPA has never revised the primary CO NAAQS from the initial level in the ensuing 36 years, though EPA revoked the secondary CO NAAQS in 1985. 50 Fed. Reg. 37,484 (Sept. 13, 1985).

15. In addition to requiring establishment of NAAQS, Clean Air Act Section 109 provides that "at five year intervals" EPA must complete a thorough review of the NAAQS as well as the criteria published under section 108. 42 U.S.C. § 7409(d)(1). As part of this process, EPA must revise existing criteria and standards or promulgate new standards as appropriate. Id.

16. EPA has long acknowledged it has a mandatory duty to review and revise existing criteria and standards. In 1980, EPA published its analysis that section 109(d)(1) of the Clean Air Act "requires EPA to review the scientific basis of existing National Ambient Air Quality Standards (NAAQS) every 5 years." 45 Fed. Reg. 77,768 (Nov. 24, 1980). EPA has reaffirmed this straightforward reading with respect to the NAAQS for ozone: "Under section 109(d)(1) of the Act, EPA is required to perform a review of the ozone NAAQS every five years." 61 Fed. Reg. 19,193, 19,195 (May 1, 1996). Thus, EPA has interpreted 42 U.S.C. § 7409(d)(1) to impose a mandatory duty.

17. Despite the CAA mandate to review and update air quality criteria every five years, it has been nearly seven years since EPA last reviewed the CO air quality criteria. 65 Fed. Reg. 50,202 (August 17, 2000). Moreover, EPA's publication of a notice in 2000 stating that the agency had reviewed the CO standard is not sufficient to satisfy the agency's duty to review the NAAQS, determine whether they should be revised or newly promulgated, and publish this decision in the Federal Register. Id.; 42 U.S.C. § 7607(d)(3). The last time EPA actually published a review of the CO NAAQS in the Federal Register was 1994. 59 Fed.

Reg. 38906 (August 1, 1994). Thus, the required actions are nearly 13 years overdue.

18. On April 26, 2007, Plaintiffs provided notice of Defendants' violations of the Act, and of their intention to file suit against Defendants pursuant to section 304(b)(2) of the Act, 42 U.S.C. § 7604(b)(2).

**CO Exposure Causes Serious Harms at Exposure Below Existing NAAQS**

19. CO is a colorless, odorless gas emitted primarily through the incomplete combustion of fossil fuels in mobile and stationary sources. USEPA, Air Quality Criteria for Carbon Monoxide, EPA 600/P-99/001F, p. 3-1 -- 3-6 (2000) ("CO 2000 AQCD"). Over 70% of ambient CO emissions are attributable to anthropogenic sources. Id. at 3-53. CO is deadly to humans and other animals at high levels, and has serious adverse effects on human health and welfare even at low levels.

20. Exposure to CO results in adverse effects on the cardiovascular and nervous systems of both adults and developing children, including exacerbation of heart disease, contributing to low birth weight, and increasing the frequency of respiratory illness. CO 2000 AQCD at 6-1. Its effects are generally related to reduced levels of oxygen in the blood caused by CO's reaction with hemoglobin. Id. at 5-22. Effects are most prevalent in the elderly, small children, fetuses, pregnant women, and people with anemia or pulmonary and heart disease. Id. at 4-3. Considering that about 20% of the United States' population has some type of cardiovascular disease, and that heart disease is the leading cause of death in this country, the impacts on this subset of the population are particularly important. Id. at 6-2, 6-6.

21. The years since the alarming information EPA disclosed in the CO 2000 AQCD have seen publication of significant new information about CO's impact on fetuses. For example, in 2000, EPA claimed, but did not act on, a non-conclusive "suggestion" that exposure to ambient CO may be associated with low birth weight. CO 2000 AQCD at E-6, 6-7. Since then, at least three studies have confirmed that suggestion. One study showed a correlation between low birth weight and elevated ambient CO during each trimester. Mildred Maisonet, *et al.*, "Relation Between Ambient Air Pollution and Low Birth Weight in the Northeastern United States," 109 Supp. 3 Environmental Health Perspectives 353, 351-- 356

(June 2001). This study identified an increased risk of low birth weight at ambient CO levels greater than 1.46 ppm, a threshold level significantly lower than studies identified by EPA in the 2000 CO air quality criteria review and significantly lower than the current CO NAAQS. Id. at 355.

22. A second study noted a correlation between decreased birth weight and CO exposure in the first trimester. Muhammad T. Salam, *et al.*, "Birth Outcomes and Prenatal Exposure to Ozone, Carbon Monoxide and Particulate Matter: Results from the Children's Health Study," 113 Environmental Health Perspectives 1638, 1641 (Nov. 2005). That study noted that a correlation between low birth weight and exposure to CO is plausible because of the effect of CO on maternal hemoglobin (reducing oxygen available to fetal circulation) and direct effects on fetal hemoglobin—which has a greater affinity for binding CO than adult hemoglobin. Id. at 1642. The study also described a correlation between low birth weight and CO exposure at ambient levels greater than 1.4 ppm. Id. at 1643.

23. A third study found an increase of carbon monoxide concentrations during the first trimester was a risk factor for low birth weight in full term infants. Eun-Hee Ha, *et al.*, "Is Air Pollution a Risk Factor for Low Birth Weight in Seoul?" Epidemiology at 643 -- 48 (Nov. 2001). These studies indicate the current NAAQS of nine ppm over eight hours and 35 ppm over one hour does not protect pregnant mothers and fetuses from the adverse effects of CO.

24. Low birth weight has a number of serious effects over an individual's lifetime. Low birth weight has been associated with disruptive behavioral problems, reduced IQ and an increased susceptibility to depression. Frances Rice, *et al.*, "The Effect of Birth-Weight with Genetic Susceptibility on Depressive Symptoms in Childhood and Adolescence," European Child & Adolescent Psychiatry at 383 (Oct. 2006). Several epidemiologic studies have shown associations between low birth weight and a number of other problems as adults, including obesity, insulin resistance, type 2 diabetes mellitus, and cardiovascular disease. See Matthew W. Gillman, M.D., "Developmental Origins of Health and Disease," New England Journal of Medicine at 1849 (Oct. 2005). CO impacts on child birth weight may

therefore exacerbate major public health problems in the adult population.

25. CO also has indirect effects on the atmosphere that EPA admits may contribute to or exacerbate global warming. USEPA, Greenhouse Gases and Global Warming Potential Values: Excerpt from the Inventory of U.S. Greenhouse Emissions and Sinks: 1990-2000, EPA 430-R-02-003, p.4 (April 2002). CO's global warming effects can occur through at least two pathways. First, CO decreases hydroxyl radicals in the environment. Hydroxyl radicals help to slow the effects of greenhouse gases like methane and assist in destroying ground level ozone, so reducing hydroxyl radicals increases the potency of greenhouse gases. Id. at p. 7. Second, over time CO becomes carbon dioxide, which directly contributes to global warming. Id. at p. 6 (quoting the Intergovernmental Panel on Climate Change, Climate Change 1995: The Science of Climate Change (J.T. Houghton *et al.* eds., Cambridge U. Press 1996)).

26. EPA's 13 year delay in performing its mandatory duty to review and update CO NAAQS is particularly egregious considering the widespread public health and welfare interests involved. These interests are those of society's most vulnerable individuals. Clear evidence shows that the current CO standards are not sufficiently protective.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## CLAIM FOR RELIEF

Violation of the CAA
42 U.S.C. §§ 7409(d); 7408(d), 7607(d)
(EPA Failure to Review and Revise CO NAAQS)

Plaintiffs reassert and reallege paragraphs 1 through 26 above.

27. Defendants have not reviewed CO NAAQS since 2000, and have not appropriately published a review since 1994. 65 Fed. Reg. 50,202 (August 17, 2000); 59 Fed. Reg. 38906 (August 1, 1994). Defendants responded to Plaintiff's sixty days notice of intent to sue letter by simply assigning Plaintiffs a Citizen Suit Number, and gave no indication that they were acting to fulfill their CAA obligations. As of the date this Complaint is filed, Defendants

have not taken any further public action to review, revise, or republish CO criteria or NAAQS.

28. Defendants have failed to perform duties mandated by the Clean Air Act, 42 U.S.C. §§ 7401-7671(q). Specifically, the Clean Air Act establishes a deadline for EPA to complete a thorough review of the air quality criteria and National Ambient Air Quality Standards ("NAAQS") for CO, make such revisions to these air quality criteria and NAAQS as may be appropriate, promulgate such new NAAQS as may be appropriate, and publish notice of these actions in the Federal Register. 42 U.S.C. §§ 7409(d); 7408(d), 7607(d). Defendants' failure to meet their deadline to review, revise, and republish CO standards violates CAA sections 109(d), 108(d), and 307(d), 42 U.S.C. §§ 7409(d); 7408(d), 7607(d).

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## **REMEDY**

29. Plaintiffs have no plain, speedy, and adequate remedy, in the ordinary course of law, other than the relief sought in this Complaint, because there is no other mechanism for compelling EPA to take the action necessary under the CAA in performing its mandatory duty to review, revise, and publish notice of these actions for CO criteria and NAAQS in the Federal Register in conformance with CAA sections 109(d), 108(d), and 307(d), 42 U.S.C. §§ 7409(d); 7408(d), 7607(d). Without an order from this Court, EPA will not promptly act to comply with its mandatory duties required by the CAA.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs seek the following relief:

1. An injunction ordering Defendants, pursuant to an expeditious schedule including interim deadlines,
   a. to complete a thorough review of the air quality criteria and National Ambient Air Quality Standards ("NAAQS") for Carbon Monoxide ("CO");
   b. to make such revisions to these air quality criteria and NAAQS as may be appropriate;
   c. to promulgate such new NAAQS as may be appropriate; and

d. and publish notice of these actions in the Federal Register.

2. A declaratory judgment establishing that

a. EPA's failure to complete its mandatory duties under CAA section 109, 42 U.S.C. § 7409(d), to review the air quality criteria and National Ambient Air Quality Standards (NAAQS) for Carbon Monoxide (CO) and make such revisions to these air quality criteria and NAAQS as may be appropriate is unlawful;

b. EPA's failure to complete its mandatory duties under CAA sections 108 and 107, 42 U.S.C. §§ 7408(d), 7607(d), to publish notice of proposed rulemaking in the Federal Register, including the factual data on which it is based, methodology used in obtaining and analyzing the data, and the major legal interpretations and policy considerations underlying the proposed rule, is unlawful.

3. An award of attorneys' fees and costs to the Plaintiffs pursuant to CAA section 304(d), 42 U.S.C. § 7604(d).

4. Such other and further relief as this Court deems just and proper.

**DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS**

Based on Plaintiffs' knowledge to date, pursuant to Civil Local Rule 3-16, the undersigned certifies that, as of this date, other than the named parties, there is no such interest to report.

Respectfully submitted this 17th day of July, 2007

By:

Robert Ukeiley
Attorney for Plaintiffs
Communities for a Better Environment, Rocky Mountain Clean Air Action, Coalition for a Safe Environment, and Physicians for Social Responsibility – Los Angeles

Shana Lazerow
Attorney for Plaintiff
Communities for a Better Environment