1  Shana Lazerow (State Bar No. 195491)
   Adrienne L. Bloch (State Bar No. 215471)
2  Communities for a Better Environment
   1440 Broadway Suite 701
3  Oakland, California  94612
   Telephone:  (510) 302-0430
4  Facsimile:  (510) 302-0438
   Email:  slazerow@cbecal.org
5
   Attorneys for Plaintiff
6  COMMUNITIES FOR A BETTER ENVIRONMENT
7  Robert Ukeiley (State Bar No. 90056)
   Pro Hac Vice
8  LAW OFFICE OF ROBERT UKEILEY
   435R Chestnut Street, Suite 1
9  Berea, KY 40403
   Telephone: (859) 986-5402
10 Facsimile: (859) 986-1299
   Email: rukeiley@igc.org
11
   Attorney for Plaintiffs
12 COMMUNITIES FOR A BETTER ENVIRONMENT,
   ROCKY MOUNTAIN CLEAN AIR ACTION,
13 COALITION FOR A SAFE ENVIRONMENT, and
   PHYSICIANS FOR SOCIAL RESPONSIBILITY-LOS ANGELES
14
15           **UNITED STATES DISTRICT COURT**
16          **NORTHERN DISTRICT OF CALIFORNIA**
17             **SAN FRANCISCO DIVISION**
18

| | |
|---|---|
| COMMUNITIES FOR A BETTER ENVIRONMENT, ROCKY MOUNTAIN CLEAN AIR ACTION, COALITION FOR A SAFE ENVIRONMENT, and PHYSICIANS FOR SOCIAL RESPONSIBILITY-LOS ANGELES, | Case No. 07-03678 |
| Plaintiffs, | MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT |
| v. | (Federal Clean Air Act, 42 U.S.C. §§ 7401 et. seq.) |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY and STEPHEN L. JOHNSON, as Administrator of the United States Environmental Protection Agency | Presiding:   Honorable Jeffrey S. White |
| Defendant | Date:         February 22, 2008 |
| | Time:         9 a.m. |
| | Location:    Courtroom 2 |

# TABLE OF CONTENTS

I.      INTRODUCTION……………………………………………………………………….1

II.     LEGAL BACKGROUND AND STANDARD OF REVIEW

        A.   Legal Background of the Clean Air Act: NAAQS and Their Revisions…..........1

        B.   Legal Standard for Summary Judgment ……………………………………..5

III.    ARGUMENT………………………………………………………………...7

        A.   Plaintiffs Have Organizational Standing to Bring this Action……………........7

        B.   The Act Imposes Mandatory Deadlines……………..……………………….8

        C.   Plaintiffs Are Entitled to Summary Judgment as a Matter of Law……..……..9

        D.  The Court Should Issue an Order Requiring Defendant to Complete the Required
            Review Process and Publish Any Revisions to the Air Quality Criteria and
            Related NAAQS in the Federal Register by
            February 9, 20011………………………………………………………………10

III.    CONCLUSION…..…………….………………………………………………...11

1

## TABLE OF AUTHORITIES

2

**FEDERAL CASES**

3

*Alabama Power Co. v. Costle*, 636 F.2d 323 (D.C. Cir. 1979)……………………………...9

4

*Alabama Power Co. v. Envtl. Defense Fund*, 493 U.S. 991 (1989)……………………….…7

5

*Am. Lung Ass'n v. Browner*, 884 F. Supp. 345, 346 (D. Ariz. 1994)……...……….......…7

6

*Am. Lung Ass'n v. Reilly*, 962 F.2d 258 (2d Cir. 1992)……………………………….…..…6

7

*Am. Trucking Ass'ns v. U.S. EPA*, 175 F.3d 1027 (D.C. Cir. 1999)…………..………….....7

8

*Am. Trucking Assn's. v. EPA*, 283 F.3d 355 (D.C. Cir. 2002)…………..……………….....9

9

*Cantrell v. City of Long Beach*, 241 F.3d 674 (Ninth Cir. (CA) 2001)………………….....5

10

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)………………………………………………3

11

*Envtl. Defense Fund v. Thomas*, 870 F.2d 892 (2d Cir. 1989)…………..………………….7

12

*Fed. Election Comm'n v. Akins*, 524 U.S. 11 (1998)…………………………………….....6

13

*Friends of the Earth v. Laidlaw Envtl. Services, Inc.*, 528 US 167 (2000)……...………….4

14

*Hunt v. Washington State Apple Advertising Comm'n*, 432 US 333 (1997)………………....4

15

*Kootenai Tribe of Idaho v. Veneman* 313 F.3d 1094 (9th Cir. 2002)………..……………...5

16

*Lujan v. Defenders of Wildlife*, 504 US 555 (1992)…………………………..………………5

17

*Maggio v. Zeitz*, 333 U.S. 56 (1948)………………………………………………………13

18

*Missouri Coalition for the Env't*, 2005 WL 2234579………………………..……………10

19

*Nat'l Parks Conservation Ass'n v. Manson*, 414 F.3d 1 (D.C. Cir. 2005)……..………….5

20

*New York v. EPA*, 443 F.3d 880 (D.C. Cir. 2006)……………………………………....12

21

*Sierra Club v. Thomas,* 658 F.Supp. 165…………………………………………….…..9,12

22

*State of New York v. Gorsuch*, 554 F.Supp 1060………………………………………….13

23

*Telecommunications Research & Action Ctr v. FCC*, 750 F.2d 70 (D.C. Cir. 1984)…..……5

24

*The Wilderness Socy v. Norton*, 434 F.3d 584 (D.C. Cir. 2006)…………………...……..5,6

25

*Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457 (2001)…………...………………..2,7,9,10

26

**FEDERAL STATUTES**

27

28 U.S.C. § 1331……………………………………………………………………………4

28

42 U.S.C. § 7604(a)…………………………………………………………………………4

1   42 U.S.C. § 7607(d)…………………………………………………..……………..…2

2   42 U.S.C. §

3   7409(d)(1)………………………………………………………………7,10,14

4   **FEDERAL RULES**

5   Fed. R. Civ. P. 56(c)……………………………………………………………...1,3

6   Fed. R. Civ. P. 56(e)………………………………………………………...……………..3

7   **FEDERAL REGULATIONS**

8   62 Fed. Reg. 38,652 (July 18, 1997)………………………………………..………9

9   70 Fed. Reg. 43,922 (July 29, 2005)…………………………………………………11

10  70 Fed. Reg. 51,591 (Aug. 31, 2005)………………………………………………...12

11  70 Fed. Reg. 54,046 (Sept. 13, 2005)………………………………………………12

12  70 Fed. Reg. 61,081 (Oct. 20, 2005)………………………………………………..11

13  70 Fed. Reg. 71,446 (Nov. 29, 2005)………………………………………………..12

14  70 Fed. Reg. 72,300 (Dec. 2, 2005)………………………………………………10

15  71 Fed. Reg. 11,561 (Mar. 8, 2006)………………………………………………10

16  72 Fed. Reg. 118 (June 20, 2007)………………………………………………..10

17  72 Fed. Reg. 177 (Sept. 13, 2007)………………………………………………..11

18  **REPORTS**

19  Eun-Hee Ha, *et al.*, *Is Air Pollution a Risk Factor for Low Birth Weight in Seoul?*

20  *Epidemiology* (Nov. 2001)……………………………………….………….……14

21  Frances Rice, *et al.*, *The Effect of Birth-Weight with Genetic Susceptibility on Depressive*

22  *Symptoms in Childhood and Adolescence*, EUROPEAN CHILD & ADOLESCENT PSYCHIATRY

23  (Oct. 2006)……………………………………...………………………………14

24  Intergovernmental Panel on Climate Change, *Climate Change 1995: The Science of Climate*

25  *Change* (J.T. Houghton *et al.* eds., Cambridge U. Press 1996)………..…………………14

26  Matthew W. Gillman, M.D., *Developmental Origins of Health and Disease*, NEW ENGLAND

27  JOURNAL OF MEDICINE (Oct. 2005)………………………………………..……..14

28

Muhammad T. Salam, *et al.*, "Birth Outcomes and Prenatal Exposure to Ozone, Carbon Monoxide and Particulate Matter: Results from the Children's Health Study," 113 *Environmental Health Perspectives* (Nov. 2005)……………………………………………14

USEPA, *Greenhouse Gases and Global Warming Potential Values: Excerpt from the Inventory of U.S. Greenhouse Emissions and Sinks: 1990-2000*, EPA 430-R-02-003, (April 2002)……………………………………………………………………………………14

USEPA, *Greenhouse Gases and Global Warming Potential Values: Excerpt from the Inventory of U.S. Greenhouse Emissions and Sinks: 1990-2000*, EPA 430-R-02-003, p.6 (April 2002)……….……………………………………………………………………...…14

USEPA, *Air Quality Criteria for Carbon Monoxide*, EPA 600/P-99/001F (2000)………….13

Mildred Maisonet, *et al.*, "Relation Between Ambient Air Pollution and Low Birth Weight in the Northeastern United States," 109 Supp. 3 *Envtl. Health Perspectives* (June 2001)……..13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.     INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 56(c), Communities for a Better Environment, Rocky Mountain Clean Air Action, Coalition for a Safe Environment, and Physicians for Social Responsibility – Los Angeles (collectively, "Plaintiffs") move for summary judgment.  These claims are straightforward "missed deadline" claims against a federal agency that has ignored the statutory deadline.  The Clean Air Act sets a mandatory deadline for Defendant Stephen L. Johnson, United States Environmental Protection Agency (EPA) Administrator, to complete a thorough review of the air quality criteria and National Ambient Air Quality Standards (NAAQS) for carbon monoxide ("CO"), to make such revisions to the air quality criteria documents and NAAQS as may be appropriate, and to publish notice of such actions in the Federal Register.  EPA admits that it has failed to meet these obligations.  Accordingly, Plaintiffs' Motion for Summary Judgment should be granted.

The sole genuine dispute in this case is the amount of time that the Court should grant EPA to comply with its statutory mandate to review and revise as necessary the air quality criteria documents and NAAQS and to complete all related obligations.  NAAQS are public health and welfare based standards that describe how much air pollution is acceptable in our outside air.  CO contributes to a variety of serious dangers ranging from adverse effects on the cardiovascular and nervous systems of adults and children and low birth weight, to effects on the atmosphere that may contribute to or exacerbate global warming.  Despite these serious consequences and Congress' mandate that EPA conduct a review every five years, EPA has not reviewed CO criteria documents and NAAQS for over a decade.  In light of the grave nature of the injury from this pollutant coupled with EPA's history of requesting more time than it actually needs, Plaintiffs request that the Court not countenance any EPA request for delay but instead require EPA to adhere to the reasonable schedule that Plaintiffs propose below.

//

//

1

## II.    LEGAL BACKGROUND AND STANDARD OF REVIEW

2

### A.    Legal Background of the Clean Air Act: NAAQS and Their Revisions

3         The Clean Air Act requires EPA to issue and update National Ambient Air Quality

4    Standards (NAAQS) for a very limited number of pollutants that endanger public health or

5    welfare.  42 U.S.C. § 7409(b).  These NAAQS sit at the heart of the Clean Air Act.

6    "Welfare" includes climate, wildlife, water, vegetation, animals, soils, and visibility. 42

7    U.S.C. § 7602(h).  As the Supreme Court has explained:

8            Section 109(b)(1) instructs the EPA to set primary ambient air quality
             standards "the attainment and maintenance of which ... are requisite to protect
9            the public health" with "an adequate margin of safety." 42 U.S.C. §
             7409(b)(1). ... The EPA, "based on" the information about health effects
10           contained in the technical "criteria" documents compiled under § 108(a)(2),
             42 U.S.C. § 7408(a)(2), is to identify the maximum airborne concentration of
11           a pollutant that the public health can tolerate, decrease the concentration to
             provide an "adequate" margin of safety, and set the standard at that level.
12
     *Whitman v. American Trucking Associations*, 531 U.S. 457, 465 (2001) (first ellipsis in
13
     original).  EPA must set a primary NAAQS for each pollutant at levels sufficient to protect
14
     public health and set a separate secondary NAAQS for each pollutant at levels that
15
     adequately protect public welfare.  In setting each NAAQS, EPA must use "the latest
16
     scientific knowledge."
17
             Congress mandated that EPA review each criteria document and NAAQS every five
18
     years and revise them if necessary to ensure that they continue to protect public health and
19
     welfare based on the latest science:
20
             Not later than December 31, 1980, and at five-year intervals thereafter, the
21           Administrator shall complete a thorough review of the criteria published under
             section 7408 of this title and the national ambient air quality standards
22           promulgated under this section and shall make such revisions in such criteria
             and standards and promulgate such new standards as may be appropriate in
23           accordance with section 7408 of this title and subsection (b) of this section.
             The Administrator may review and revise criteria or promulgate new
24           standards earlier or more frequently than required under this paragraph.
25
     42 U.S.C. § 7409(d)(1).  EPA is also required to involve the public in the criteria document
26
     development and NAAQS review process by publishing notice and reviewing comments.  42
27
     U.S.C. § 7607(d).
28

1    The NAAQS, then, are at the heart of the Clean Air Act's "cooperative federalism"

2    scheme. State and local air pollution control agencies develop State Implementation Plans

3    (SIPs), with EPA's guidance and oversight, and implement the SIPs to ensure that in areas

4    with dirty air the pollution levels are reduced to below the NAAQS, and that in areas with

5    clean air the pollution levels are maintained below the NAAQS. However, the efforts under

6    the Clean Air Act to clean up or to maintain our air quality at the level the latest science says

7    is safe cannot commence until EPA reviews and revises the NAAQS.

8    **B.    Legal Standard for Summary Judgment**

9    Summary judgment should be entered whenever "there is no genuine issue of material

10   fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P.

11   56(c). When the moving party has demonstrated that there is no material issue of fact for

12   trial, the "adverse party may not rest upon the mere allegations or denials of the adverse

13   party's pleadings, but … must set forth specific facts showing that there is a genuine issue for

14   trial." Fed. R. Civ. P. 56(e). Summary judgment is not treated as "a disfavored procedural

15   shortcut" but as "an integral part of the Federal Rules as a whole, which are designed to

16   secure the just, speedy and inexpensive determination of every action." *Celotex Corporation*

17   *v. Catrett*, 477 U.S. 317 (1986).

18   **III.   ARGUMENT**

19   EPA is liable under the Clean Air for its failure to complete a thorough review of the

20   air quality criteria and NAAQS for CO, to make revisions to these air quality criteria and

21   NAAQS are may be appropriate, to promulgate new NAAQS for CO, as may be appropriate,

22   and to publish notice of such actions in the Federal Register. In this case, it is critical that the

23   Court order EPA to follow a reasonable schedule that requires Defendant to complete the

24   required NAAQS review and any revisions. This is necessary to protect the public from

25   serious risks imposed by the current NAAQS.

26   **A.    Plaintiffs Have Organizational Standing to Bring this Action**

27   The court has jurisdiction over this action because it arises under the Clean Air Act's

28   citizen suit provision, 42 U.S.C. § 7604(a) ("the district courts shall have jurisdiction…to

1   order the administrator to perform such act or duty"), and raises a federal question, 28 U.S.C.

2   § 1331.

3       Plaintiffs have standing to bring this suit on behalf of their members because: (1) their

4   members have standing to sue in their own right; (2) the interests at stake are germane to the

5   their organizational purpose; and (3) neither the claim asserted nor the relief requested

6   requires the members to participate directly in the lawsuit. *See Hunt v. Washington State*

7   *Apple Advertising Comm'n*, (432 US 333, 343, (1997). The latter two conditions are easily

8   satisfied here. *See* Decl. of Maxine Oliver-Benson ¶¶6-11; Decl. of Erin Robertson ¶¶4-10;

9   Decl. of Carla Perez ¶¶2-4; Decl. of Jeremy Nichols ¶¶3-4. Furthermore, with regard to the

10  first condition, the organizational members have established the facts necessary to satisfy the

11  requirements for standing.

12      The individual organizational members would have standing to sue in their own rights

13  because each has suffered "an 'injury in fact' that is (a) concrete and particularized and (b)

14  actual or imminent, not conjectural or hypothetical…" *See Friends of the Earth v. Laidlaw*

15  *Environmental Services, Inc.*, 528 US 167, 180 (2000). Moreover, these injuries are "fairly

16  traceable to the challenged action of [D]efendant; and …. It is likely, as opposed to merely

17  speculative, that the [injuries] will be redressed by a favorable decision." *Id.* at 1980-81.

18  Organizational members live, work, and/or recreate in areas that are adversely impacted by

19  CO. *See* Decl. of Maxine Oliver-Benson ¶¶3-5; Decl. of Erin Robertson ¶¶2-4; Decl. of

20  Carla Perez ¶6; Decl. of Jeremy Nichols ¶3. These injuries are directly traceable to EPA's

21  failure to review and revise the air quality criteria and NAAQS related to CO pollution. *See*

22  Decl. of Maxine Oliver-Benson ¶¶5-11; Decl. of Erin Robertson ¶¶3-10; Decl. of Carla Perez

23  ¶¶6-9; Decl. of Jeremy Nichols ¶¶5-7.  Finally, EPA's completion of the required review

24  will redress these injuries. *See* Decl. of Maxine Oliver-Benson ¶¶12-13; Decl. of Erin

25  Robertson ¶¶11-12; Decl. of Carla Perez ¶10; Decl. of Jeremy Nichols ¶8.

26      A lesser requirement applies to the traceability and redressability prongs of the

27  standing test in cases, such as this case, which challenge the failure of government officials

28  to engage in required procedural actions. As the Supreme Court has explained, "[t]he person

who has been accorded a procedural right to protect a concrete interest can assert that right without meeting all the normal standards for redressability and immediacy." *Lujan v. Defenders of Wildlife*, 504 US 555, 573 n.7 (1992). Therefore, the fact that EPA could ultimately elect not to revise the NAAQS for CO does not undercut the immediacy or redressability of the injuries explained above.

In *National Parks Conservation Association v. Manson*, 414 F.3d 1, 5 (D.C. Cir. 2005), the court stated that "[a] plaintiff who alleges a deprivation of a procedural protection to which he is entitled never has to prove that if he had received the procedure the substantive result would have been altered. All that is necessary is to show that the procedural step was connected to the substantive result." *Id.* at 5 (quoting *Sugar Cane Growers Coop. v. Veneman*, 289 F.3d 89, 94-95 (D.C. Cir. 2002)); *see also Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1113 (9th Cir. 2002) (In cases of procedural injury, plaintiffs "need not demonstrate that the ultimate outcome following proper procedures will benefit them." (quoting *Cantrell v. City of Long Beach*, 241 F.3d 674, 682 (9th Cir. (CA) 2001)

In *The Wilderness Society v. Norton*, 434 F.3d 584, 593-94 (D.C. Cir. 2006), the Court referenced *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70 (D.C. Cir. 1984) ("TRAC"), to provide an example of a situation in which a plaintiff seeking to redress a procedural injury would satisfy the requirements for standing:

> In a paradigmatic TRAC case, a petitioner seeks to compel agency action that the petitioner claims is legally required and that directly affects the party before the court. When the agency then acts pursuant to a TRAC order, the petitioner will either secure the redress sought or have a final order on the merits from the agency that will be subject to judicial review. This case would be covered by TRAC if, hypothetically, [the plaintiff's] claim arose because the agency had failed to comply with a statutory provision under the Wilderness Act requiring [the agency] to make a determination on the merits of a concrete wilderness proposal within a precise time frame and a positive determination would redress the particularized injuries of [the plaintiff's] members.

*The Wilderness Society*, 434 F.3d at 593-94. This hypothetical situation mirrors the situation presented in the present case. Here, Defendant has "failed to comply with a statutory

1    provision" (42 U.S.C. § 7409(d)(1)) requiring EPA to review the available science and

2    "make a determination" on whether or not to revise the NAAQS for CO "within a precise

3    time frame" (five years).  If EPA makes "a positive determination," that is, if EPA

4    promulgates more stringent NAAQS, this determination will "redress the particularized

5    injuries" discussed above.  For purposes of standing, the court assumes that EPA will make a

6    positive determination and lower the NAAQS to provide Plaintiffs with more protection of

7    their interests such as air that does not damage their health or enjoyment of natural areas.

8    However, even a determination that the existing NAAQS need no revision will redress

9    Plaintiffs' injuries by allowing organizational members to be more certain that the standards

10    against which the air that they breathe is measured are sufficiently protective of human health

11    and the environment.  Moreover, any argument that a decision to retain the existing NAAQS

12    would not redress these injuries fails, because Plaintiffs will then at least have received a

13    final determination against which they can seek judicial review.  *See Federal Election*

14    *Commission v. Akins*, 524 U.S. 11, 25 (1998) (recognizing that the fact an agency has

15    discretion in making substantive decisions related to procedural violations is immaterial to

16    the standing inquiry, as "those adversely affected by a discretionary agency decision

17    generally have standing to complain that the agency based its decision upon improper legal

18    grounds.").  Finally, EPA's review of the available science on CO pollution generates useful

19    information for Plaintiffs to use in making decisions about the steps needed to protect

20    themselves from CO pollution as well as scientific information Plaintiffs use in their work.

21    *See* Decl. of Maxine Oliver-Benson ¶13; Decl. of Erin Robertson ¶12; Decl. of Carla Perez

22    ¶10; Decl. of Jeremy Nichols ¶8.

23        **B.    The Act Imposes Mandatory Deadlines**

24        Notwithstanding the clear directive of 42 U.S.C. § 7409(d)(1), EPA has a history of

25    failing to review air quality documents and NAAQS within the five-year statutory period.

26    Thus, the courts have had several opportunities to examine the nature of the duties imposed

27    by 42 U.S.C. § 7409(d)(1), and have consistently construed them to be nondiscretionary in

28    nature.  *See American Lung Association v. Reilly*, 962 F.2d 258, 263 (2d Cir. 1992) (failure to

1   review NAAQS for ozone); *Environmental Defense Fund v. Thomas*, 870 F.2d 892, 900 (2d

2   Cir. 1989) (failure to review NAAQS for sulfur dioxide), cert denied *sub nom. Alabama*

3   *Power Co. v. Environmental Defense Fund*, 493 U.S. 991 (1989); *American Lung*

4   *Association v. Browner*, 884 F. Supp. 345, 346 (D. Ariz. 1994) (failure to review NAAQS for

5   particulate matter); *American Trucking Associations v. United States EPA*, 175 F.3d 1027,

6   1047 (D.C. Cir. 1999) rehearing granted in part on other grounds, denied in part, 195 F.3d 4

7   (D.C. Cir. 1999), rev'd in part on other grounds, aff'd in part *sub nom. Whitman v. American*

8   *Trucking Associations*, 531 U.S. 457 (2001).

9        **C.**　　**Plaintiffs Are Entitled to Summary Judgment as a Matter of Law**

10        Plaintiffs are entitled to summary judgment because Defendant's Answer admits

11   liability on Plaintiffs' Clean Air Act claims.  As discussed above, 42 U.S.C. § 7409(d)(1)

12   establishes a five-year deadline for the completion of reviews of air quality criteria and

13   NAAQS as well as the requirement for public notice and comments for these actions.

14   Defendant's Answer admits Defendant's failure to adhere to the statutory deadline:

15        EPA admits that it has not completed a review of the air quality criteria for
16        CO since 2000.  EPA further admits that it has not completed a review of the
          NAAQS for CO since 1994.  EPA admits that it responded to plaintiff's [sic]
17        notice of intent to sue.  EPA admits that it had not published any Federal
          Register notices regarding the carbon monoxide air quality criteria or NAAQS
18        as of the date the complaint was filed.

19   Answer to Complaint ¶27.

20        EPA admits that it has failed to perform a nondiscretionary duty to complete a
          review of the criteria and the NAAQS for CO and make such revisions in such
21        criteria and standards and promulgate such new standards as may be
          appropriate in accordance with sections 108 and 109 of the Clean Air Act.

22   *Id.* at ¶ 28.  Defendant is thus in violation of 42 U.S.C. § 7409(d)(1), and Plaintiff is entitled

23   to summary judgment on this violation.

24

25

26        **D.  The Court Should Issue an Order Requiring Defendant to Complete the**
27           **Required Review Process and Publish Any Revisions to the Air Quality**
             **Criteria and Related NAAQS in the Federal Register by February 11, 2011**

28

1    Plaintiffs request that this Court require EPA to conclude reviews of the air quality

2    criteria and related NAAQS for CO by February 11, 2011.  Based on a start date of

3    September 13, 2007, when EPA issued its call for information regarding carbon monoxide,

4    this three-year, five month time frame is consistent with the deadlines imposed by court

5    orders in similar cases.  Plaintiffs' requested timeline is feasible and necessary to protect the

6    public health and welfare from the serious and widespread risks posed by the inadequate CO

7    standards currently in use.

8    In light of the numerous opportunities to measure progress in the review and

9    rulemaking process, and EPA's long history of failing to complete the NAAQS review and

10   revision process in a timely manner, Plaintiffs propose the following 39-month schedule of

11   interim deadlines.  These will ensure the timely completion of each step in the NAAQS

12   review process and facilitate the conclusion within the three-year, five month deadline.

13   First, Plaintiffs request that the Court order EPA to prepare the science assessment

14   support document – no later than April 14, 2008.  *See* Howekamp Decl. ¶7.  The Order

15   further should require EPA to complete the actual science assessment document by

16   September 1, 2009.  *See* Howekamp Decl. ¶7.  The Order should require EPA to prepare the

17   risk/exposure assessment drafts and final documents in parallel with the science assessment.

18   *See* Howekamp Decl. ¶8.  The Order should require EPA to complete the notice of proposed

19   rulemaking for CO-related NAAQS no later than July 12, 2010, for publication in the Federal

20   Register within 10-working days, with the notice of final rulemaking concerning any

21   revisions to the NAAQS due on or before February 11, 2011, for publication in the Federal

22   Register within 10 working days.  *See* Howekamp Decl. ¶9.  All implementation activities

23   should also be completed by February 11, 2011.  *Id*.

24   The Court should reject any arguments by EPA that Plaintiffs' proposed deadlines are

25   impossible to meet.  The United States District Court for the District of Arizona was

26   confronted with a similar assertion from EPA in a suit to compel the agency to review the

27   NAAQS for Particulate Matter (PM).  The analysis that court utilized applies equally to the

28   CO review process in this case:

1

2

3

4

> In such circumstances, the agency carries a heavy burden to show that compliance with statutory mandated deadlines is impossible or infeasible. Excuses for delay must go beyond the general proposition that further study and analysis of materials will make final agency action better, because further study will always make everything better, and it is always easier to do something with more rather than less time.

5    *American Lung Ass'n v. Browner*, 884 F. Supp. at 347 (internal citations omitted); *see also*

6    *Sierra Club v. Thomas,* 658 F.Supp. 165, 172 (the burden on the agency to show

7    impossibility "is especially heavy where the agency has failed to demonstrate any diligence

8    whatsoever in discharging its statutory duty…and has in fact ignored that duty for several

9    years."); *Alabama Power Co. v. Costle*, 636 F.2d 323, 359 (D.C. Cir. 1979) ("The agency's

10    burden of justification in such a case is especially heavy.").  In justifying its decision to order

11    a shorter timeline than that proposed by EPA for the review process, the court pointed out

12    that by allowing the NAAQS review deadline to lapse, "the EPA has not merely missed a

13    deadline, it has nullified the congressional scheme for a fixed interval review and revision

14    process." *American Lung Ass'n v. Browner*, 884 F. Supp. at 348.  Notably, although EPA

15    contended that it simply could not perform the review for particulate matter in less than 4

16    years and 3 months.  *Id.* at 346-347, the agency was nonetheless able to complete this PM

17    NAAQS review process in less than three years. *See* 62 Fed. Reg. 38,652 (July 18, 1997)

18    (finalizing the revised NAAQS for PM).  Moreover, the product of this PM NAAQS review

19    process survived legal challenges raised by both business and environmental groups,

20    demonstrating that three years is ample time for EPA to select defensible air quality

21    standards. *See American Trucking Assns. v. EPA*, 283 F.3d 355, 358 (D.C. Cir. 2002), rev'd

22    in part on other grounds, aff'd in part *sub nom. Whitman v. American Trucking Associations*,

23    531 U.S. 457 (2001).

24        The schedule Plaintiffs propose is reasonable.  Expert David Howekamp has filed a

25    declaration in connection with this motion testifying that the proposed schedule is

26    reasonable.  In addition to other work as an air quality expert, Mr. Howekamp served as the

27    Director of EPA Region IX's Air Division for 18 years, and worked for EPA for 31 years.

28    *See* Howekamp Decl. ¶2.  Consequently, Mr. Howekamp has significant practical knowledge

1  concerning the technical and policy considerations involved in CO NAAQS.  EPA's

2  innerworkings, and expertise in the subject matter of criteria pollutants.  *Id*.  In his expert

3  opinion, based on review of the documents, experience, and the timeframe for review, the

4  CO NAAQS review can be accomplished in 39 months.  *See* Howekamp Decl. ¶5.  For

5  instance, Mr. Howekamp observes that the while the generic EPA schedule provides for a

6  nine month period between the Notice of Proposed Rulemaking and publication of final

7  science assessment, EPA has acknowledged and agreed to publish the final rulemaking for

8  NO2 and SO2 NAAQS in approximately 7 months.  *See* Howekamp Decl. ¶9.  He explains

9  that since CO is no more complex than NO2 or SO2, and is only one criteria pollutant, seven

10  months would be adequate.  *Id*.

11  The deadline that Plaintiffs propose is also consistent with the deadline imposed by

12  the court in *Missouri Coalition for the Environment*, where the plaintiffs brought suit to

13  compel the EPA to review and update as necessary the air quality criteria and NAAQS for

14  lead.  Although EPA proposed a four and a half year period to complete the NAAQS review

15  process, on September 14, 2005, the court entered an order requiring EPA to finalize the

16  NAAQS review process by September 1, 2008.  *Missouri Coalition for the Environment*,

17  2005 WL 2234579 at 2.  The reasonableness of the September 1, 2008 deadline is borne out

18  by the fact that EPA has thus far been able to essentially meet the interim deadlines imposed

19  by the *Missouri Coalition* court's order.  *See id*. (establishing December 1, 2005 as the

20  deadline for completion of the first draft of the lead air quality criteria document); 70 Fed.

21  Reg. 72,300 (Dec. 2, 2005) (announcing availability of draft lead air quality criteria

22  document for public comment); *see also* 71 Fed. Reg. 11,561 (Mar. 8, 2006)(explaining

23  EPA's plan for complying with the remainder of the court-imposed deadlines).

24  The fact that EPA is engaged in other NAAQS reviews does not counsel against

25  adopting Plaintiffs' deadlines in this case.  First, Congress intended that EPA engage in

26  simultaneous reviews of the air quality criteria and NAAQS for multiple pollutants, as

27  Congress allowed EPA only five years in which to review the adequacy of the air quality

28  criteria and NAAQS for all six criteria pollutants.  *See* 42 U.S.C. § 7409(d)(1).  The only way

1    EPA can ever comply with 42 U.S.C. § 7409(d)(1) is to conduct multiple reviews

2    simultaneously.  Second, the fact that EPA is currently operating under court order to review

3    the air quality criteria and NAAQS for other criteria pollutants does not somehow grant EPA

4    authorization to further violate the Congressional mandate of 42 U.S.C. § 7409(d)(1) with

5    regard to CO.

6            Plaintiffs' proposed deadlines will not place an impossible burden on EPA.  First, the

7    SOx and NOx reviews, as well as the lead, ozone and particulate matter reviews are all at

8    different stages of the review and revision process.  *See* 72 Fed. Reg. 118 (June 20, 2007)

9    (announcing public workshop to inform the public of the agency's scientific assessment for

10   NOx and SOx.)  This range of deadlines staggers the workload, minimizing "bottlenecks" at

11   the agency.  Moreover, except at the highest levels of agency management, different EPA

12   personnel carry out the review process for different pollutants.  Even at the upper echelons of

13   EPA there is little reason to believe that Plaintiffs' proposed schedule will create problems

14   because these EPA officials have little reason to involve themselves in the most minute

15   details of the air quality criteria and NAAQS review documents.  Policy decisions such as

16   balancing economic impacts versus more stringent standards are barred from consideration in

17   the NAAQS setting process.  *See Whitman v. American Trucking Associations*, 531 U.S. at

18   464.

19           Moreover, EPA initiates the criteria document and NAAQS review process by

20   publishing a short, simple "call for information" in the Federal Register.  After Plaintiffs filed

21   this lawsuit, EPA initiated its review of the air quality criteria for CO by publishing a call for

22   information.  *See* 72 Fed. Reg. 177 (52,369) (Sept. 13, 2007) (announcing that EPA is

23   undertaking a review of the CO air quality criteria).  Plaintiffs' proposed schedule would

24   give EPA nearly two years in between EPA's publication of the call for information for CO

25   and the science assessment document.

26           Further, the Court should carefully scrutinize any argument EPA may make about

27   lacking the resources to expeditiously complete a thorough review of the CO air quality

28   criteria and related NAAQS.  EPA's recent regulatory actions reflect the agency's decision to

1    prioritize fulfilling policy objectives at the expense of allocating agency resources to comply

2    with Congressional mandates.  Too often, EPA's agenda has given precedence to

3    discretionary actions that weaken environmental standards over statutorily compelled actions

4    like the NAAQS review at issue, which are designed to ensure sufficient protection of the

5    environment.  For example, EPA has devoted significant resources to drafting regulatory

6    revisions designed to roll back environmental regulations on power plants.  *See* 70 Fed. Reg.

7    61,081 (Oct. 20, 2005) (proposing revisions to the emissions tests used to determine whether

8    modifications made to existing facilities trigger Clean Air Act prevention of significant

9    deterioration and new source review requirements for that facility).  Moreover, the agency

10   has undertaken a number of other regulatory actions not compelled by statutory deadline or

11   court order which are at best questionable from the standpoint of advancing environmental

12   protection.  *See e.g. New York v. EPA*, 443 F.3d 880 (D.C. Cir. 2006) (rejecting another

13   recent EPA attempt to weaken prevention of significant deterioration and new source review

14   rules); 70 Fed. Reg. 43,922 (July 29, 2005) (proposing to exempt emissions sources from

15   previously applicable hazardous pollutant limitations during facility startups, shutdowns, and

16   malfunctions); 70 Fed. Reg. 51,591 (Aug. 31, 2005) (staying the effectiveness of the NOx

17   State Implementation Plan ("SIP") Call as it pertains to the State of Georgia); 70 Fed. Reg.

18   54,046 (Sept. 13, 2005) (announcing interim guidance advising states how to weigh

19   photochemical reactivity of Volatile Organic Compounds in crafting SIPs that meet the

20   ozone NAAQS); 70 Fed. Reg. 71,446 (Nov. 29, 2005) (proposing to remove the "nuisance"

21   provisions of Georgia law from the Georgia Clean Air Act State Implementation Plan).  The

22   Court should therefore "take with a grain of salt" any allegations by Defendant that it cannot

23   expeditiously complete the review process for the CO air quality criteria and related NAAQS

24   due to agency time and budgetary constraints.

25          In exercising discretion in evaluating requests for delay, "the court 'must consider

26   whether the official involved … has in good faith employed the utmost diligence in

27   discharging his statutory duty.'"  *Sierra Club v. Thomas*, 658 F.Supp. at 171 (citing *Maggio*

28   *v. Zeitz*, 333 U.S. 56, 68 (1948)).  "If the administrator could possibly have complied with the

statutory mandate, but did not because of competing concerns or other decisions on his part, then he was not acting in 'good faith'" *Id*. (citing *State of New York v. Gorsuch*, 554 F.Supp 1060, 1065 n.4.)  EPA has not acted in good faith in reviewing NAAQS for CO since the review is more than ten years overdue.  Thus, no further extension is appropriate.

Finally, a sufficiently expeditious schedule is necessary because of the severe and widespread harm that these pollutants inflict.  Scientific evidence has linked CO to a wide variety of adverse effects.  Complaint ¶12; Answer to Complaint ("Answer") ¶12. CO is emitted primarily through the incomplete combustion of fossil fuels in mobile and stationary sources.  USEPA, *Air Quality Criteria for Carbon Monoxide*, EPA 600/P-99/001F, p. 3-1 -- 3-6 (2000) ("CO 2000 AQCD").  Complaint ¶19, Answer ¶19.  Over 70% of ambient CO emissions are attributable to anthropogenic sources.  CO 2000 AQCD *at* 3-53.  Complaint ¶ 19, Answer ¶19.  CO is deadly to humans and other animals at high levels, and has serious adverse effects on human health and welfare even at low levels.  Complaint ¶19, Answer ¶19.  Exposure to CO results in adverse effects on the cardiovascular and nervous systems of both adults and developing children.  CO 2000 AQCD at 6-1; Complaint ¶20, Answer ¶20. CO exacerbates heart disease, contributes to low birth weight, and increases the frequency of respiratory illness.  *Id*.  CO's effects are generally related to reduced levels of oxygen in the blood caused by its reaction with hemoglobin.  CO 2000 AQCD at 5-22.  Complaint ¶20, Answer ¶20.  Effects are most prevalent in the elderly, small children, fetuses, pregnant women, and people with anemia or pulmonary and heart disease.  CO 2000 AQCD at 4-3. Complaint ¶20, Answer ¶20.  One study has shown a correlation between low birth weight and elevated ambient CO during *each* trimester.  Mildred Maisonet, *et al.*, "Relation Between Ambient Air Pollution and Low Birth Weight in the Northeastern United States," 109 Supp. 3 *Environmental Health Perspectives* 353, 351-356 (June 2001).  This study identified an increased risk of low birth weight at ambient CO levels greater than 1.46 ppm, a threshold level significantly lower than studies identified by EPA in the 2000 CO air quality criteria review and significantly lower than the current CO NAAQS.  *Id.* at 355. Complaint ¶ 21, Answer ¶ 21.  A second study noted a correlation between decreased birth weight and CO

exposure in the *first* trimester.  Muhammad T. Salam, *et al.*, "Birth Outcomes and Prenatal Exposure to Ozone, Carbon Monoxide and Particulate Matter: Results from the Children's Health Study," 113 *Environmental Health Perspectives* 1638, 1641 (Nov. 2005).  The study described a correlation between low birth weight and CO exposure at ambient levels greater than 1.4 ppm. *Id.* at 1643.  Complaint ¶22, Answer ¶22.  A third study found increased CO concentrations during the *first* trimester was a risk factor for low birth weight in full term infants.  Eun-Hee Ha, *et al.*, "Is Air Pollution a Risk Factor for Low Birth Weight in Seoul?" *Epidemiology* at 643 -- 48 (Nov. 2001).  These studies indicate that the current NAAQS of nine ppm over eight hours and 35 ppm over one hour does not protect pregnant mothers and fetuses from the adverse effects of CO.  Complaint ¶23, Answer ¶23; Low birth weight has a number of serious effects over an individual's lifetime.  Low birth weight has been associated with disruptive behavioral problems, reduced IQ and an increased susceptibility to depression.  Frances Rice, *et al.*, "The Effect of Birth-Weight with Genetic Susceptibility on Depressive Symptoms in Childhood and Adolescence," *European Child & Adolescent Psychiatry* at 383 (Oct. 2006).  Complaint ¶24, Answer ¶24; several epidemiologic studies have shown associations between low birth weight and a number of other problems as adults, including obesity, insulin resistance, type 2 diabetes mellitus, and cardiovascular disease.  *See* Matthew W. Gillman, M.D., "Developmental Origins of Health and Disease," *New England Journal of Medicine* at 1849 (Oct. 2005). Complaint ¶ 24, Answer ¶ 24; CO has indirect effects on the atmosphere that EPA admits may contribute to or exacerbate global warming.  USEPA, *Greenhouse Gases and Global Warming Potential Values: Excerpt from the Inventory of U.S. Greenhouse Emissions and Sinks: 1990-2000*, EPA 430-R-02-003, p.4 (April 2002).  Complaint ¶ 25, Answer ¶ 25.  Over time, CO becomes carbon dioxide, which directly contributes to global warming.  USEPA, *Greenhouse Gases and Global Warming Potential Values: Excerpt from the Inventory of U.S. Greenhouse Emissions and Sinks: 1990-2000*, EPA 430-R-02-003, p.6 (April 2002). (quoting the Intergovernmental Panel on Climate Change, *Climate Change 1995: The Science of Climate Change* (J.T. Houghton *et al.* eds., Cambridge U. Press 1996)). Complaint ¶25, Answer ¶25.  Adverse effects on the

1  cardiovascular and nervous systems, exacerbation of heart disease, low birth weight,

2  increasing frequency of respiratory illness, and global warming are not risks that the public

3  should have to bear while EPA dallies away in open defiance of a Congressional mandate.

4  **IV.    CONCLUSION**

5          For the reasons explained above, Plaintiffs respectfully request that the Court grant

6  summary judgment as to Plaintiffs' claims for relief, order EPA to complete a thorough

7  review of the air quality criteria and related NAAQS for CO in accordance with 42 USC s

8  7409(d)(1), and further order Defendant to conclude the review of the CO air quality criteria

9  and related NAAQS by February 11, 2011 while complying with the interim deadlines

10  discussed above.

11

12  Respectfully submitted,

13

14  Dated:  November 16, 2007                _____/s/_____
                                            Robert Ukeiley
15                                          Attorney for Plaintiffs
                                            COMMUNITIES FOR A BETTER ENVIRONMENT
16                                          ROCKY MOUNTAIN CLEAN AIR ACTION
                                            COALITION FOR A SAFE ENVIRONMENT
17                                          PHYSICIANS FOR A SOCIAL RESPONSIBILITY –
                                            LOS ANGELES
18

19                                          Shana Lazerow
                                            Adrienne L. Bloch
20                                          Attorney for Plaintiff
                                            COMMUNITIES FOR A BETTER ENVIRONMENT
21

22

23

24

25

26

27

28