Shana Lazerow (State Bar No. 195491)
Adrienne L. Bloch (State Bar No. 215471)
Communities for a Better Environment
1440 Broadway Suite 701
Oakland, California 94612
Telephone: (510) 302-0430
Facsimile: (510) 302-0438
Email: slazerow@cbecal.org

Attorneys for Plaintiff
COMMUNITIES FOR A BETTER ENVIRONMENT

Robert Ukeiley (State Bar No. 90056)
Pro Hac Vice
LAW OFFICE OF ROBERT UKEILEY
435R Chestnut Street, Suite 1
Berea, KY 40403
Telephone: (859) 986-5402
Facsimile: (859) 986-1299
Email: rukeiley@igc.org

Attorney for Plaintiffs
COMMUNITIES FOR A BETTER ENVIRONMENT,
ROCKY MOUNTAIN CLEAN AIR ACTION,
COALITION FOR A SAFE ENVIRONMENT, and
PHYSICIANS FOR SOCIAL RESPONSIBILITY-LOS ANGELES

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| COMMUNITIES FOR A BETTER ENVIRONMENT, ROCKY MOUNTAIN CLEAN AIR ACTION, COALITION FOR A SAFE ENVIRONMENT, and PHYSICIANS FOR SOCIAL RESPONSIBILITY-LOS ANGELES,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY and STEPHEN L. JOHNSON, as Administrator of the United States Environmental Protection Agency<br><br>Defendant | Case No. 07-03678<br><br>DECLARATION OF DAVID HOWEKAMP IN SUPPORT IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT<br><br>(Federal Clean Air Act, 42 U.S.C. §§ 7401 et. seq.) |

I, David Howekamp, declare that the following statements are true and correct to the best of my knowledge, information and belief, and are based on my personal knowledge.

1. I am an environmental consultant specializing in air quality management. I practice as both an independent consultant as well as an affiliate of LECG, LLC, a firm specializing in providing expert witness testimony. In my practice I have provided expert advice to companies, governmental agencies, nongovernmental organizations and citizen groups. Much of my practice involves complex issues regarding the impact and control of carbon monoxide pollution. I have also provided expert advice to organizations regarding appropriate rulemaking schedules for Clean Air Act requirements contested in Federal District Court. I have a Master's Degree in Business Administration and a Bachelor's Degree in Mechanical Engineering from the University of California at Berkeley. My CV is attached hereto as Attachment A.

2. Prior to becoming an environmental consultant in April 2000, I was a career employee at the U.S. Environmental Protection Agency for 31 years. From 1982 to 2000, I was the Director of the Air Division for EPA's Region 9 office in San Francisco. In this position, I was the principal advisor to the Regional Administrator on policy, political and technical issues involving air quality management. I managed a budget of over $40 million and directed a staff of 120 scientists, engineers and planners in implementing the requirements of the Clean Air Act. I was responsible for communicating to the public the health and environmental effects of air pollutants, including carbon monoxide (CO), so I developed a personal knowledge of the information contained in the criteria documents for the National Ambient Air Quality Standards (NAAQS). I was responsible for the approval of State Implementation Plans prepared for demonstrating attainment of the CO NAAQS, so I have first-hand knowledge of the technical and policy considerations in matters concerning the CO NAAQS. I was also personally responsible for the preparation of comprehensive Federal Implementation Plans for NAAQS so I have first-hand experience with the management demands and resource requirements for producing complex Federal rulemakings. These rulemakings established national precedents requiring the involvement

1  and approval of EPA headquarters.  I also have extensive experience in establishing or
2  negotiating rulemaking schedules since most of the rulemakings produced by my division
3  were performed as a result of court orders or settlement agreements.

4      3. EPA has recently revised its process for reviewing the adequacy of the NAAQS
5  and presumably will use that revised process to comply with the statutory requirement for the
6  review of the CO NAAQS.  EPA now divides the assessment phase into four distinct
7  elements covering planning, science assessment, risk and exposure assessment, and policy
8  assessment/rulemaking.  The science assessment more or less equates to the preparation of
9  the criteria document in EPA's historical review process. The risk and exposure assessment
10 and policy assessment more or less functionally equate to the preparation of the staff paper in
11 the old process.  And the individual planning functions in the criteria document preparation
12 and staff paper preparation phases have been pulled out and prepared together at the front
13 end of the new process.  The rulemaking portion in the revised process will essentially be the
14 same as that in the historical process, augmented by the publication of an advanced notice of
15 proposed rulemaking, which will address policy assessment.

16     4. EPA has published on its website memos and graphics that describe the new
17 NAAQS review process.  I have reviewed the timeframes shown in the March, 2007 EPA
18 document, entitled Generic NAAQS Review Process available at
19 http://www.epa.gov/ttnmain1/naaqs/peacock_4_17_07_attachment2.pdf, and attached that
20 document hereto as Attachment B.  I have also reviewed the proposed consent decree
21 between five plantiffs and EPA, which establishes a schedule for EPA's review and, if
22 appropriate, revisions of the air quality criteria for sulfur oxides (SOX) and nitrogen oxides
23 (NOX) and the NAAQS for Nitrogen Dioxide (NO2) and sulfur dioxide (SO2) NAAQS.
24 That proposed consent decree is attached hereto as Attachment C.

25     5. Based on my review of these documents and my experience, the timeframe for
26 review and, if appropriate, revision of the CO NAAQS can be accomplished in
27 approximately 39 months. Such a schedule would be expeditious yet would provide enough
28 time for a thorough technical and policy review.

*CBE v. EPA*     Howekamp Decl in Support of Plaintiffs' Motion for Summary Judgment

3

6. <u>Planning Phase</u>: EPA has known since April 26, 2007 that the Plaintiffs intended to sue to enforce the agency's nondiscretionary duty to review and revise the air quality criteria for CO and revise the NAAQS for CO as may be appropriate.  Because the duty is nondiscretionary, EPA should have used the past 7 months to conduct the detailed planning needed to comply with the requirement, knowing the only question to be decided by the court is the exact schedule for completion of the task.  In fact, since the detailed schedule in the generic NAAQS review process document calls for the planning process to take 7 months, the planning phase should be complete if EPA has followed its own schedule.

7. <u>Science Assessment Phase</u>:  The science assessment phase of the new review process consists of two major components:  the preparation of a science assessment support document and the development of the science assessment document itself.  As with the planning process, EPA should have used the past 7 months to begin preparation of workshop materials and the draft support document in parallel with preparation of the planning documents.  As called for in the generic review process document, I agree that an expeditious, but realistic, timeframe for completion of the workshops and draft support document, including peer review, is 12 months.  Therefore, 5 months from the present time (in addition to the past 7 months) should be sufficient for completion of the draft support document.

Upon completion of the draft support document, the EPA generic schedule provides a total of 19 months for the preparation of two draft science assessment documents and a final science assessment.  EPA's schedule includes an 8 month preparation period for the first draft, followed by a 2 month comment period, a 5 month preparation period for the second draft, followed by a 2 month comment period, and then an additional 2 month period to prepare the final document.  I believe this 19 month schedule can be shortened to 16.5 months by reducing slightly the amount of time devoted to preparing the drafts to 6.5 months for the first draft and 4 months for the second draft.  This 16.5 month time frame is consistent with the position advocated by EPA in the previously referenced lawsuit regarding revisions of the air quality criteria for SOX and NOX and the NAAQS for NO2 and SO2 NAAQS

(Declaration of Stephen D. Page, Director of the Office of Air Quality Planning and Standards, Office of Air and Radiation, EPA, May 31, 2006). Based on my experience, the science issues regarding carbon monoxide are generally no more complicated than those regarding NO2 and SO2. Therefore, this 16.5 month time frame should be adequate to prepare a quality science assessment.

In summary, based on these timeframes, the final science assessment document should be completed 21.5 months from the present date.

8. <u>Exposure/Risk Assessment Phase</u>: As shown in the generic EPA schedule, the risk/exposure assessment drafts and final document are prepared in parallel with the science assessment. The advanced notice of rulemaking and the timeframes can be adjusted to reflect my schedule adjustments for the science assessment and rulemaking.

9. <u>Policy Assessment/Rulemaking Phase</u>: The EPA generic schedule provides for completion of the notice of proposed rulemaking (NPR) 17 months after completion of the final science assessment. However, in the recently proposed consent decree regarding the NO2 and SO2 NAAQS, EPA has agreed to publish the NPR 10.5 months after completion of the final science assessment. Again because the science and policy issues regarding carbon monoxide are generally no more complicated than NO2 and SO2, this 10.5 month time frame should also be adequate for CO. The preparation of the advanced notice of proposed rulemaking that precedes the publication of the NPR can be prepared in parallel with the last 4.5 months of the science assessment process so that it can be published shortly after the final science assessment document is published, leaving at least six months for preparation of the NPR.

The EPA generic schedule provides for completion of final rulemaking 9 months after publication of the NPR. However, in the recently proposed consent decree regarding the NO2 and SO2 NAAQS, EPA agreed to publish the final rulemaking approximately 7 months after completion of the NPR, which again should be more than adequate for a carbon monoxide schedule.

10. <u>Recommended Schedule for CO NAAQS Review</u>: In summary, my recommended schedule would allow a total of 39 months for EPA to prepare the assessments and sign the final rulemaking for the CO standard based on the following timeline for the key products expressed in months from the present date:

| | | |
|---|---|---|
| Completion of planning phase | 0 months | (should have been completed) |
| Completion of science assessment | 21.5 months | |
| Completion of NPR | 32 months | |
| Publication of final rulemaking | 39 months | |

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: November 16, 2007

_____
David Howekamp

*CBE v. EPA*    Howekamp Decl in Support of Plaintiffs' Motion for Summary Judgment

6