IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| COMMUNITIES FOR A BETTER ENVIRONMENT, *et al.,*<br><br>Plaintiffs,<br><br>v.<br><br>STEPHEN L. JOHNSON, Administrator, United States Environmental Protection Agency,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. C-07-3678 JSW |
| | | |

## DECLARATION OF STEPHEN D. PAGE

I, Stephen D. Page, under penalty of perjury, affirm and declare that the following statements are true and correct to the best of my knowledge and belief, and are based on my own personal knowledge or on information contained in the records of the United States Environmental Protection Agency (EPA) or supplied to me by EPA employees under my supervision.

1. I am the Director of the Office of Air Quality Planning and Standards (OAQPS) within the Office of Air and Radiation at EPA, a position I have held since September 2002. Prior to that time, I served as Director of the Office of Radiation and Indoor Air and in various other positions at EPA.

2.  In my current capacity as Director of OAQPS, I am responsible for overseeing EPA's implementation of major portions of the Clean Air Act (CAA or Act), including the promulgation of many very significant regulations pursuant to the CAA.  In this capacity, I am familiar with the processes and time periods required for major EPA actions under the CAA, including periodic review and, as appropriate, revision of air quality criteria and national ambient air quality standards (NAAQS) under section 109(d) of the Act, 42 U.S.C. § 7409(d).

3.  This declaration is filed in support of EPA's Memorandum in Support of Cross Motion for Summary Judgment and in Opposition to Plaintiffs' Motion for Summary Judgment. Its purpose is to explain the amount of time EPA needs to complete its current review of the air quality criteria for carbon monoxide (CO) and the NAAQS for CO, and, if appropriate, to revise these NAAQS.[1]

## BACKGROUND

**Air Quality Criteria and NAAQS**

4.  Air quality criteria and NAAQS issued under CAA sections 108 and 109 of the Act are central to the nation's programs to control air pollution.  Section 108 requires EPA to identify certain ubiquitous air pollutants that may reasonably be anticipated to endanger public health and welfare and to issue comprehensive assessments of scientific information bearing on their effects.

---

[1] For convenience, this document generally uses the terminology "review of the CO NAAQS" to describe the review of the air quality criteria for CO and the NAAQS for CO.

As described in section 108, these comprehensive assessments, referred to as "air quality criteria," must "accurately reflect the latest scientific knowledge useful in indicating the kind and extent of all identifiable effects on public health or welfare which may be expected from the presence of such pollutant in the ambient air." Section 109, in turn, requires EPA to promulgate NAAQS based on the air quality criteria for each such pollutant. Section 109(d)(1) requires EPA to periodically review and, as appropriate, revise existing air quality criteria and NAAQS. Section 109(d)(2) requires that EPA appoint an independent scientific review committee to advise EPA on its review of the air quality criteria and on appropriate revisions to the NAAQS. The Clean Air Scientific Advisory Committee (CASAC) of EPA's Science Advisory Board was accordingly established pursuant to section 109(d) to provide independent scientific advice on NAAQS matters.

5. In substance, NAAQS define levels of ambient air quality that in EPA's judgment are requisite to protect the nation's health and welfare from effects ranging from premature mortality and aggravation of respiratory diseases, for example, to crop damage and disruption of ecosystems. Currently there are NAAQS for six common air pollutants: particulate matter, ozone, carbon monoxide, sulfur dioxide, nitrogen dioxide, and lead.

6. Under CAA section 110 and related provisions, the NAAQS are the principal basis for control of air pollution by federal, state and local governments. As such, the NAAQS collectively affect every major industry in the country and cost many billions of dollars to attain. Because of the significance of the NAAQS for protecting public health and welfare and the economic impact of the standards, the Administrator's decisions on the NAAQS are closely scrutinized and typically subject to litigation. *See e.g. Whitman v. EPA*, 531 U.S. 457 (2001) (challenge to revised NAAQS for particulate matter and ozone); *NRDC v. Adm'r, EPA*, 902 F.2d

962 (D.C. Cir. 1990)(challenge to revised NAAQS for particulate matter); *American Petroleum Institute v. Costle*, 665 F.2d 1176 (D.C. Cir. 1981)(challenge to revised NAAQS for ozone).

**Review and Revision of Air Quality Criteria and NAAQS**

7. In view of the extraordinary importance of the NAAQS, stemming from their public health, environmental, social, and economic impact, it is critical that EPA make sound, well-reasoned decisions when establishing or revising them. Almost by definition, however, the key data on which EPA must rely in such decisions are essentially reports from the "frontiers" of scientific research, where both the methodologies and the results of key studies are often controversial, and scientists of impeccable credentials often reach markedly different conclusions in assessing their significance. In view of the uncertainties in these data, as well as the enormous volume of scientific research currently focused on major air pollutants, sound decisions on retention of revision of existing NAAQS must be made through a highly rigorous process designed to address what are often very complex issues of science, law, and policy.

8. The following paragraphs describe the NAAQS review process in generic terms, as well as recent actions by EPA to review and strengthen this process, including its timeliness. A more detailed description of the activities involved in each phase is provided in connection with EPA's proposed schedule for completing its review of the NAAQS for CO and the related air quality criteria. See paragraphs 63-67 below.

**Overview of NAAQS review process**

9. Every NAAQS review is different in nature and scope from every other, depending not only on the characteristics of the air pollutant in question but also on the state of the science at the time of the review. As discussed below, however, the NAAQS review process necessarily includes (1) a science, exposure/risk, and policy  assessment phase, which involves a highly

- 4 -

rigorous assessment of scientific and technical data and provides a number of opportunities for

public and expert review of relevant staff and Agency documents; and (2) a regulatory

development phase, in which any proposed revision of a NAAQS is governed by special

rulemaking procedures under the CAA.[2] A number of EPA offices are involved in the process,

including the Office of Air and Radiation, the Office of Research and Development, the Office of

General Counsel, the Office of Policy, Economics, and Innovation, and other offices with related

responsibilities (e.g., drinking water, toxic substances, cleanup of Superfund sites), as

appropriate for any particular review.

   10.  It is important to note that implementation of the decisions made during a NAAQS

review is a separate and distinct process from the NAAQS review itself.  Under the Clean Air

Act, implementing a revised NAAQS is integrally tied to the obligation on States to develop

plans and control strategies that will attain the NAAQS.  When a NAAQS is revised, section 110

of the Act requires States to submit plans containing measures necessary to attain and maintain

the NAAQS.  EPA also may conduct rulemakings after the NAAQS review process is completed

to further clarify the responsibilities of States under section 110 of the Act. The actions taken by

States and EPA to implement a NAAQS normally stretch over a many year time frame, starting

from when a NAAQS review is completed.

---

[2]    EPA does not believe that a decision to retain an existing NAAQS necessarily must be made
through a full rulemaking process.  However, EPA intends to use the notice and comment
rulemaking process established in the CAA for the CO NAAQS review, even in the event that
EPA's final decision is to retain the current NAAQS.

11.  These implementation actions will clearly be impacted by the decisions made during a NAAQS review, but they are not part of the NAAQS review process itself.  Implementation of a NAAQS is not under sections 108 and 109 of the Act but instead is structured around the requirements set out in section 110.

12.  <u>Science, exposure/risk, and policy assessment phase, and related planning</u>.  A major element of this phase is review and appropriate revision of the air quality criteria for the pollutant in question.  In general, air quality criteria take the form of documents prepared by EPA that review and critically assess pertinent scientific studies and related information.  As scientific research on the effects of the major air pollutants has intensified, the *science assessment* has become a comprehensive, multi-volume assessments of the relevant medical, scientific, and technical information, historically referred to as a "criteria document."  The most recent criteria document for lead, for example, occupies two volumes and well over 2000 pages.[3]  The criteria document is typically a comprehensive analysis of the relevant science, including the chemistry of the pollutant, sources of ambient levels, and information from toxicology, epidemiology, and other scientific studies on the impact of the pollutant on public health and welfare, and provides an integrated synthesis of this scientific information.

13.  In addition to the science assessment, this phase includes *assessment of exposure and risk* to public health and to the environment, as appropriate, from various ambient levels of the pollutant.  This assessment uses the science from the criteria document along with information about exposure of sensitive human population groups and, in some cases, sensitive plant or

---

[3]    Air Quality Criteria for Lead (USEPA, 2006).

- 6 -

animal species to different ambient levels of the pollutant, to provide a quantified assessment of risks to public health and welfare at various levels of ambient air quality.

14. This phase also includes a *policy assessment*. The policy assessment uses the information from the science assessment and exposure/risk assessment and weighs the strengths and limitations of the scientific and technical information, as well as the quantitative estimates of exposure and risks. It frames this information in a manner that informs policy judgments to be made by the Agency concerning the adequacy of the current standards and identifies various options, as appropriate, in terms of possible alternative standards for consideration.

15. Given the magnitude and complexity of the scientific and technical information typically involved in NAAQS reviews, detailed *planning* at the outset of the process is a key element for ensuring that the assessments are both timely and scientifically sound and are focused on key issues that are relevant to the ultimate policy decisions that need to be made.

16. A critical part of this assessment phase is the receipt of *advice from CASAC* on the scientific issues involved in each of these assessments. This seven-member committee is supplemented by expert consultants selected for their particular expertise in fields pertinent to the specific pollutant under review, forming a CASAC Review Panel that includes generally about 20 members. Composed of physicians, research scientists, and other experts from medical faculties, research institutions, and the private sector, this CASAC Panel provides its advice and recommendations to the Administrator. As discussed below, CASAC's recommendations and comments play a significant role throughout the entire review process.

17. EPA prepares drafts of the various assessment documents that address the issues described above and provides them for CASAC and public review. CASAC provides critical advice to the agency on the scientific adequacy of the assessments and the current standards and

on possible alternative standards that may be supported by the underlying scientific and technical information.  This fulfills CASAC's statutory role as an advisor on the air quality criteria and standards under section 109 and provides valuable input from CASAC for the Administrator in making decisions on the NAAQS.

**Efforts to Strengthen the NAAQS Review Process, Including Timeliness**

18.  Historically, the functional elements described above have been accomplished through development of three or more documents, a criteria document, a staff paper, and one or more exposure/risk assessment reports issued in conjunction with the staff paper.  The assessment of the science has been primarily presented in the criteria document, and historically the bulk of the science assessment activities have been undertaken by the National Center for Environmental Assessment (NCEA) of EPA's Office of Research and Development.  The criteria document has generally been written for a scientific audience rather than being oriented toward policy makers and the decisions confronting them.  In the past, the criteria document has often presented a large volume of material in a somewhat encyclopedic fashion.

19.  The staff paper, prepared by the Office of Air Quality Planning and Standards (OAQPS) of EPA's Office of Air and Radiation, was designed to bridge the gap between the science assessment and the policy judgments required in making decisions on the NAAQS.  Historically, it has provided an integration of the most policy-relevant scientific information, in a manner intended to be more understandable and meaningful for policy makers and a broad public audience.  The staff paper would winnow down the large volume of comprehensive information in the criteria document to address the critical needs of decision makers in addressing the issues central to promulgating, retaining, or revising a NAAQS, such as decisions on the indicator, level, form and averaging time of a standard.

- 8 -

20. In addition to performing this focused integrative function of bringing forward the most policy-relevant scientific information, the staff paper has also served two other functions - presenting and interpreting the major findings of any exposure/risk assessments that were performed in conjunction with the staff paper, and integrating the scientific evidence and the quantitative risk-based information into a policy assessment. The policy assessment would include staff-identified ranges of policy options and alternative standards for the Administrator to consider.

21. Historically, this process has relied upon two separate planning stages, one for the criteria document and one for the staff paper and any related exposure/risk assessment report. This process resulted in some duplicative review of information by two different EPA offices in planning for the criteria document and the staff paper. In addition, an explicit focus on the policy-relevant issues central to decisions on promulgating or revising a NAAQS occurred well into the process rather than at the outset.

22. Given the importance of the NAAQS, the magnitude of the resources and time expended in reviewing them, and the rapid pace of scientific research on criteria pollutants, over the years EPA Administrators and senior managers have repeatedly sought ways to strengthen and expedite the review process. After an intensive review of the process in the 1990's, for example, EPA built on previous improvements by adopting a number of additional measures that were designed to accelerate it significantly, including both internal changes in the process and strict limits on the time allowed for public comment at various stages. *See* 59 Fed. Reg. 5,164 (1994).

23. Since then, EPA has continued to seek further ways to streamline or otherwise improve the NAAQS process. In connection with its current review of the NAAQS for ozone,

for example, EPA's senior staff recently developed an approach involving a broader, more

collaborative process for planning and developing the important documents issued in the

NAAQS review process, as well as a significant restructuring of the criteria document itself.

24. More recently, Marcus Peacock, Deputy Administrator of EPA, directed that an intra-

agency workgroup be formed to conduct a "top-to-bottom" review of the NAAQS process.

Although, as noted above, previous reviews of the NAAQS process had led to significant

changes and improvements, the workgroup was charged with examining whether and, if so, how

the process could be further strengthened, and with identifying ways of further streamlining the

process so EPA can achieve more timely NAAQS reviews.  EPA accordingly established a

NAAQS Process Review Workgroup (hereafter "NAAQS Workgroup" or "Workgroup")

composed of highly knowledgeable representatives, including senior management, from each of

the offices involved in NAAQS reviews.  In performing the review, the Workgroup focused on

the basic functional elements of the NAAQS review process – planning, science assessment,

exposure/risk assessment, policy assessment, and rulemaking – and on the nature and linkages

between the contents of the documents that are currently part of a NAAQS review.

25. After a rigorous review of the process, the NAAQS Workgroup prepared a

comprehensive report with specific recommendations for strengthening it further.[4]  The Acting

Assistant Administrator for the Office of Air and Radiation, William Wehrum, and the Assistant

Administrator for the Office of Research and Development, George Gray, endorsed the

recommendations of the Workgroup in April 2006, offered two additional recommendations for

---

[4]     "Review of the Process for Setting National Ambient Air Quality Standards," prepared by
the NAAQS Process Review Workgroup, March, 2006.

consideration, and recognized that some components of the recommendations would benefit from further consultation with CASAC and the public.[5]

25.1.  On June 27, 2006, EPA held a public workshop on the NAAQS review process to solicit the views of the public and allow an opportunity for the public and EPA to discuss issues related to the NAAQS review process generally.  In addition, on June 29, 2006, CASAC and EPA had a public meeting where EPA presented the Workgroup's recommended changes to the NAAQS review process, and CASAC provided comments on those recommendations.  CASAC provided additional views in a letter dated July 18, 2006.

25.2.  In a memo dated December 7, 2006, Marcus Peacock adopted the recommendations of the NAAQS Workgroup and identified specific changes to the NAAQS review process to restructure the timing and approach of the various elements of that process, covering planning, science assessment, exposure and risk assessment, and policy assessment/rulemaking.[6]  All of these key functional elements will be focused and coordinated in a way that will strengthen the NAAQS review process, and will promote the overall timeliness of the review cycle by providing for a streamlined and efficient document preparation and review process.

---

[5]   "Review of Process for Setting National Ambient Air Quality Standards," Memorandum from George Gray, Assistant Administrator, Office of Research and Development, and William Wehrum, Acting Assistant Administrator, Office of Air and Radiation, to Marcus Peacock, Deputy Administrator, April 3, 2006.

[6]   "Process for Setting National Ambient Air Quality Standards," Memorandum from Marcus Peacock, Deputy Administrator, to George Gray, Assistant Administrator, Office of Research and Development, and William Wehrum, Acting Assistant Administrator, Office of Air and Radiation, December 7, 2006.

25.3.  As a result of additional EPA consultations with CASAC, Marcus Peacock issued

a memo dated April 17, 2007 that supplements the December 7 memo by revising certain

elements of the generic draft schedule for NAAQS reviews.[7]  In particular, EPA and CASAC

agreed that prior to the publication of the advance notice of proposed rulemaking (ANPR) a

second draft exposure/risk assessment report should be issued by EPA and reviewed by CASAC,

and the final exposure/risk assessment report should be completed.  This change was made to

improve the ability of CASAC and the public to provide advice to the Administrator on policy

options prior to issuance of an ANPR, and to provide an opportunity for more meaningful

comment on the ANPR.

26.  As discussed in the following paragraphs, below, based on the recommendations of

the NAAQS Workgroup, EPA has restructured the timing and approach of the various elements

of the assessment phase described above, covering *planning, science assessment,  exposure and

risk assessment, and policy assessment*, which is linked to the rulemaking phase.  All of these

key functional elements have been focused and coordinated in a way that strengthens the

NAAQS review process, including review by CASAC, and will promote the overall timeliness of

---

[7]   "Modifications to Process for Setting National Ambient Air Quality Standards,"
Memorandum from Marcus Peacock, Deputy Administrator, to George Gray, Assistant
Administrator, Office of Research and Development, and William Wehrum, Acting Assistant
Administrator, Office of Air and Radiation, April 17, 2007.

the review by avoiding redundancy and inefficiency in the document preparation and review process. For example, EPA has used a more integrated planning process, to refocus the process so that the policy-relevant issues that the Administrator must consider are a framework for all of the documents, to perform the exposure/risk assessment earlier in the process and in a manner that is more closely integrated with the science assessment, and to avoid duplication of effects by having the policy-relevant integration of the science occur in the science assessment document.

26.1. EPA will initiate this integrated planning process for each review upon the conclusion of the prior NAAQS review. This is intended to allow EPA to use the key unresolved issues identified in the prior review as the basis for planning the next review. Thus, in 2008, EPA intends to both complete two NAAQS reviews (for ozone and lead), and to start planning activities for the next reviews for those standards. Attachment A presents timelines with details of EPA's projected schedules for all of the NAAQS reviews during the period 2007-2011. Maintaining a nearly continuous review cycle is intended to ensure that EPA meets its statutory obligations to review the air quality criteria and NAAQS every five years. However, the ongoing review cycles also require careful management to ensure that neither CASAC nor EPA is overwhelmed by the need to give adequate attention simultaneously to major documents for different reviews.

27. Based on the recommendations of the NAAQS Workgroup, EPA has substantially restructured and refocused the traditional criteria document in a number of ways. To emphasize these changes, EPA has renamed the document as an "Integrated Science Assessment (ISA)." As compared to the criteria document, the ISA provides a more explicit and concise evaluation, integration, and synthesis of the most policy-relevant science: namely, that related to the indicator to use for the pollutant at issue, the averaging time for the standard, the form of the

- 13 -

standard, and the level of the standard. The ISA also includes key science judgments that are

integral to the exposure/risk assessments. The foundation for this integrative assessment is still

the comprehensive review of the underlying science, and the ISA is accompanied by annexes that

provide more detailed summaries and information on the recent studies, as appropriate.[8] This

restructuring is designed to make the central document more directly focused on answering the

questions (to be identified in the planning process, as noted below) that are most relevant in

making decisions on whether and, if so how, to revise a NAAQS. This will allow for more

focused and timely review by CASAC and make it more likely that a well-grounded science

assessment can be completed in a timely manner.

    28. As with criteria documents, the process for developing a science assessment will

begin with an extensive search of the scientific literature bearing on the health and welfare

effects of the air pollutant in question. Because the establishment of NAAQS for a pollutant

tends to focus research attention on that pollutant, the number of scientific studies that have

---

[8] EPA's science assessment process, as implemented in the revised NAAQS process, does not include the preparation of a science assessment support document. In the initial phase of implementing the new process we proposed developing such a document, but as a result of experience with implementation of the new process EPA now prepares a single Integrated Science Assessment that is supported by more detailed and comprehensive annex chapters.

emerged since the last revision of a criteria document may be very large. The most recently revised criteria document, for example, cites more than 2000 studies related to lead. Based on the recommendations of the NAAQS Workgroup, the planning process that precedes preparation of the science assessment itself will identify the key questions that are most relevant to the outcome of the overall review, allowing both the literature search and the preparation of the science assessment to be focused on the most highly relevant studies.

29.   As pertinent studies are identified and evaluated, NCEA prepares initial drafts of key sections of the science assessment and/or discussions of key policy-relevant scientific issues to facilitate consultation with experts in the relevant fields at public workshops. These workshops are necessary to assure that all relevant research has been identified and appropriately characterized, and that the likely broad range of views among the experts on interpreting the scientific information in a policy-relevant context is elicited and discussed. The workshop materials are authored by teams of experts in the field, both inside and outside EPA; the draft criteria document for lead referred to above, for example, was prepared by some 50 authors.

30.  Similar to the process followed in the past with the criteria documents, drafts of the ISA are reviewed by the CASAC Panel. In reviewing drafts of the ISA, the CASAC Panel examines in detail the appropriateness and completeness of the scientific information included in the draft, the accuracy of the characterization of that information and the related uncertainties, the validity and balance of the interpretation and integration of the information, and the scientific soundness of the conclusions drawn from the information. To allow for thorough discussion of the views of the Panel members, as well as time for public comments, CASAC meetings typically last two days. They are attended by representatives of major industries, national environmental groups, and other interested parties and are transcribed by a court reporter.

- 15 -

Because the science being evaluated is generally on the frontiers of scientific research, and thus often controversial, these meetings often elicit sharply contrasting points of view. Given such differing views, as well as the sheer volume and complexity of the materials addressed, it has almost always been necessary in the past for EPA to prepare and seek CASAC review of two or more drafts of a criteria document in order to resolve key scientific issues. Similarly, EPA believes it is necessary for CASAC to have the opportunity to review two drafts of an ISA, although EPA expects that the changes to the review process discussed above will obviate the need for any additional reviews.

31. Based on the NAAQS Workgroup report, EPA is now separating the functional elements previously combined in a staff paper and the related report(s) on exposure and risk assessment, i.e., an assessment of exposure to a pollutant and resulting risks, and an assessment of issues based on the most relevant scientific and risk information. The first element, a rigorous assessment of exposure and risk, is performed earlier in the process to facilitate its closer coordination with the ISA and its completion closer in time to the completion of the ISA. This enhances both its scientific strength as well as its timeliness. The exposure/risk assessment is similar to the exposure/risk report and related chapters(s) that were formerly included in the staff paper, such that it is a more concise document than had previously been prepared and avoids any repetition of information in two different documents. As discussed in the NAAQS Process Workgroup Report and reflected in Attachment A, these reviews allocate a larger proportion of the overall schedule than in previous reviews to the science and exposure/risk assessments; more closely link these assessments through a more coordinated, consultative process; and minimize the time between the completion of these assessments and reaching proposed decisions on the NAAQS.

- 16 -

32. As an integral part of this exposure and risk assessment, OAQPS will conduct a variety of technical analyses that would previously have been incorporated into a staff paper and related reports, including analyses of air quality patterns and distributions, human exposure to the pollutant under review, and associated risks to public health, and when appropriate, analyses of the distribution of the pollutant through the environment and resulting impacts on public welfare.

33. Based on the ISA and the exposure/risk assessment, EPA will prepare a policy assessment that will include policy-relevant air quality analyses and assessments of policy issues (which were formerly included in a staff paper) for publication in the Federal Register as an ANPR. The ANPR will include discussion of approaches for making policy choices and identify for the Administrator's consideration ranges of alternative NAAQS that reflect alternative policy judgments consistent with the science as reflected in the science assessment and exposure/risk assessment documents. The policy assessment in the ANPR will "bridge the gap" between the agency's science and exposure/risk assessments and the judgments required of the Administrator in deciding whether to retain or revise the NAAQS. The ranges of alternative standards and the underlying analyses will also provide a framework for CASAC advice and recommendations and for public comment.

34. <u>Regulatory development phase</u>. Based on the science, exposure/risk, and policy assessment documents, the advice of CASAC, and public comments, the Administrator will decide whether it is appropriate to propose a revision to the NAAQS in question. Any such proposal is governed by special rulemaking procedures set forth in section 307(d) of the Act, 42 U.S.C. § 7607(d). EPA's notice of proposed decision, for example, must be accompanied by a detailed statement of its basis and purpose, including the factual data on which the proposal is based and the methodology used in obtaining and analyzing the data. 42 U.S.C. § 7607(d)(3). In

the case of NAAQS, section 307(d)(3) specifically requires that the proposal "set forth or summarize and provide a reference to any pertinent findings, recommendations, and comments" made by CASAC and explain any important departures from CASAC's advice.

35.  As in other proceedings under section 307(d), EPA must provide at least 30 days for public comment on the proposal. 42 U.S.C. § 7607(h).   EPA must also provide an opportunity for oral presentation of comments on NAAQS proposals, keep a transcript of any such proceeding, and hold the record of the proceeding open for an additional 30 days to provide an opportunity for submission of rebuttal and supplementary information.  42 U.S.C. § 7607(d)(5).  EPA often holds more than one public hearing, in different parts of the country, because of the broad interest in NAAQS proposals.  In the past, a total period of 90 or more days has often been allowed for public comment on NAAQS proposals, given their importance, the complexity of the issues, the large number of scientific publications underlying the proposed standards, and the intense public interest typically generated by the proposals.  Where shorter periods have been provided, interested parties have frequently requested extensions on the ground that additional time is necessary to allow an adequate opportunity for comment in light of these factors.

36.  After evaluating all written and oral comments on the proposal, EPA must determine whether any revisions are warranted and draft the final rulemaking decision and supporting technical documents.  The final decision must be accompanied by a detailed statement of basis and purpose, an explanation of the reasons for any major changes from the proposal, and a response to each of the significant comments submitted in written or oral presentations during the comment period.  42 U.S.C. § 7607(d)(6).

37.  Historically, NAAQS rulemakings have often involved additional steps beyond those described above, reflecting the  unusual complexity and importance of the issues involved.

These have included, for example, preparation of supplements to criteria documents and staff papers that incorporate important advances in scientific research, additional CASAC meetings to review such developments, the extension or reopening of comment periods, reproposals, and petitions for reconsideration.

## BACKGROUND OF CURRENT REVIEW

38. Carbon monoxide occurs naturally in the environment and also results from human activities. Carbon monoxide is formed as a result of incomplete combustion, *i.e.*, when carbon in fuel is not burned completely. In past reviews of the CO NAAQS, the air quality criteria addressed public health effects reported to be associated with exposure to ambient CO concentrations. Carbon monoxide at elevated concentrations has been shown to adversely affect human health. For example, short-term (1- to 8-hour) exposure to CO at elevated concentrations causes decreased time to onset of exercise-induced chest pain in individuals with angina pectoris, and elevated ambient CO concentrations have been associated with decreased birth weight.

39. In 1971, EPA promulgated primary and secondary NAAQS for CO, each set at 9 parts per million (ppm), not to be exceed more than once per year and calculated as an average of values measured over an eight-hour period (the "8-hour average").[9] 36 Fed. Reg. 8186 (April 30, 1971). During the late 1970's and early 1980's, EPA conducted a review of the CO NAAQS and

---

[9]    The CO NAAQS also has a standard of 35 ppm not to be exceeded more than once per year, calculated as an average value over one hour (the "1-hour standard"). This standard is designed to prevent unhealthy short-term spikes in CO levels, but since these levels are not typically seen in ambient air in the United States, the 8-hour standard is considered the standard of concern for attainment purposes.

the related air quality criteria under section 109(d)(1) of the Act and decided not to revise the primary CO NAAQS for CO and to revoke the secondary CO NAAQS. 50 Fed. Reg. 37484 (December 13, 1985). During the late 1980's and early 1990's, EPA conducted another review of the CO NAAQS and the related air quality criteria under section 109(d)(1) of the Act. With full involvement of CASAC and the public, this review led to publication of a revised criteria document (1991) and a staff paper (1992). After consideration of these documents, EPA determined in 1994 that revisions to the primary NAAQS for CO were not appropriate. 59 Fed. Reg. 38906 (August 1, 1994). In this final determination in 1994, EPA noted that all but a few areas of the United States were in attainment of the existing standards for CO.

40. Since EPA's last review of the CO NAAQS was completed in 1994, there has been a substantial decline in the amount of CO emitted into the air and a concomitant reduction in concentrations of CO in the air. For example, from 1990 to 2006, average air quality concentrations of CO decreased by 62% in the United States[10]. According to the most recent (2006) data from air quality monitors operated by state and local air management agencies, as submitted and certified to EPA's Air Quality System in compliance with 40 CFR § 58.15 and § 58.16, CO levels measured 3 parts per million ("ppm") or less at 90 percent of the monitors in the nation, with the average CO concentration being 2 ppm. Only one area in the country exceeded the CO NAAQS based on the most recent monitoring data available to EPA. In addition, with the exception of four metropolitan areas, all areas that were previously designated as being in nonattainment of the CO NAAQS, following the promulgation of the 1990 Clean Air

---

[10] *See* http://www.epa.gov/airtrends/carbon.html

Act Amendments (CAAA), have met the requirements of the CO NAAQS and have been

formally redesignated as attainment.[11]

41.  The substantial decline in CO emissions from 1990 to 2006 is mainly attributable to

regulatory efforts to reduce CO emissions from mobile and stationary sources.  As State and

federal regulatory programs are fully implemented, EPA expects to see significant additional

reductions in CO emissions and air quality concentrations of CO in future years.

42.  Many of EPA's regulatory efforts to reduce CO emissions stem from an increasing

awareness that the national pollution problem consists of both local as well as regional emission

problems.

43.  The largest anthropogenic source of CO is motor vehicle exhaust.  In the last several

years, EPA has also issued rules that will lead to dramatic reductions in the emissions of CO

from gasoline and diesel powered cars, trucks, buses and off-road equipment (*e.g.,* construction

equipment, farm machinery, and mining equipment).  These regulations require the use of

advanced emissions control technology for the engines that will reduce CO.  65 Fed. Reg. 6698

(Feb. 10, 2000) (standards for most cars and light duty trucks), 66 Fed. Reg. 5002 (Jan. 18, 2001)

---

[11]  *See* http://www.epa.gov/air/oaqps/greenbk/cnca.html (remaining nonattainment areas); http://www.epa.gov/air/airtrends/pdfs/dv_co_2004_2006.xls (monitoring data for areas previously designated nonattainment).

(standards for truck and bus diesel engines), 69 Fed. Reg. 38958 (June 29,2004) (standards for off-road diesel engines program).

## STATUS OF CURRENT REVIEW

44. Since the last review of the NAAQS for CO was completed in 1994, EPA has been accumulating additional information concerning the health effects of CO.  During 1998 and 1999, NCEA prepared drafts of a CO criteria document, which were reviewed by CASAC and the public.  A final CO criteria document was published in June 2000.  (EPA, 2000)[12]  EPA was prepared to move forward to complete review of the CO NAAQS but was delayed as a result of a decision of Congress that the National Academy of Sciences, or another appropriate entity, should conduct a multi-year study of the topographical and meteorological effects on ambient CO emissions and concentrations.  *See* H.R. Conf. Rep. No. 106-988 at 121 (2000); *see also* S. Rep. No. 106-410 at 81 (2000).

In light of the relationship between this study, which was undertaken by the National Research Council (NRC), and the NAAQS review, EPA decided to postpone completion of the review of the CO NAAQS until after completion of the NRC study.  This study was conducted between 2000 and 2003 and was published in April 2003.  *Managing Carbon Monoxide Pollution in Meteorological and Topographical Problem Areas* (2003), National Research

---

[12]  U.S. EPA. Air Quality Criteria for Carbon Monoxide. U.S. Environmental Protection Agency, Office of Research and Development, National Center for Environmental Assessment, Washington Office, Washington, DC, EPA 600/P-99/001F, 2000.

Council of the National Academies.  At that time, EPA was heavily involved in review of the

NAAQS for PM and ozone, and due to limited resources the decision was made to postpone

continuing the review of the CO NAAQS.

    EPA has been engaged in planning and other actions to prepare for a review of the CO

NAAQS during 2007.  Upon receiving notice that the plaintiffs intended to initiate this lawsuit,

EPA accelerated these activities to conduct the review as rapidly as possible. Among other

things, NCEA continued compiling pertinent scientific studies for use in preparing the science

assessment for CO; assessing the likely nature and scope of the reviews in light of trends in

research since the last review; identifying key issues that will need to be addressed in the science

assessment; and identifying external experts who would be qualified to serve as authors or

reviewers in the development of science assessment or as participants in peer review workshops.

NCEA and OAQPS have been coordinating efforts on preliminary planning for the review as a

whole, including aligning resources.  OAQPS and NCEA have worked collaboratively, and

OAQPS has engaged in similar efforts regarding aspects of the review for which it has primary

responsibility.

    45.  More recently, EPA has prepared and published a Federal Register notice, formally

initiating the current review of the criteria and NAAQS and inviting interested parties to help

assure that all relevant information will be considered.  The call for information related to CO

was published in the Federal Register on September 13, 2007.

    46. As part of EPA's planning for the review of the NAAQS for CO, EPA has continued

an assessment of the scientific literature concerning CO-related human health effects and

exposure.  In addressing these and other significant issues, EPA will draw upon and take into

account not only new research data reported in the scientific literature but also analyses of newly

emerging information performed by other federal agencies, state agencies, and by international organizations such as the World Health Organization.

47. Decisions on potential revisions to the NAAQS for CO may also draw from a quantified risk assessment for health effects. Such assessment would build upon the characterization of evidence linking ambient CO to effects on health. The design of any health assessments will in part be based on the conclusions drawn about the strength of the evidence in the science assessment. Considerations in the development of health risk assessments will include a range of highly technical issues.

48. Ultimate decisions on revision of the NAAQS for CO, or recommendations for other regulatory or policy options, will necessarily be based on considerations of issues such as:

- The appropriate indicator for a standard – *e.g.*, CO in the case of carbon monoxide.

- The appropriate averaging time(s) for standards – *e.g.*, annual, monthly, daily or hourly averages.

- The form of the standard(s) – *e.g.*, the air quality statistic to be compared against the numerical level of a standard.

- The numerical level of the standard(s).

- How to measure the pollutant – *e.g.*, criteria for selection of appropriate sampling devices.

- The appropriate sampling frequency (*e.g.*, daily sampling) and monitoring strategy for where and how to locate monitors.


## SCHEDULE FOR COMPLETING CURRENT REVIEW

49. EPA is firmly committed to carrying out and completing its review of the air quality NAAQS for CO and the related air quality criteria as rapidly as possible, consistent with

satisfying applicable legal requirements and assuring sound and scientifically supportable

decisions. Accordingly, EPA has incorporated the accelerated approach adopted in the 1990's

and the further improvements adopted for the current ozone review, as well as the comprehensive

recommendations made in the recent NAAQS Process Workgroup Report, in developing its

proposed schedules for completing this review. EPA has also tailored its approach to this

particular review in a way designed to increase the overall timeliness and effectiveness.

50. The resulting proposed schedules call for completion of a final science assessment

addressing the human health effects of CO by May 28, 2010; final exposure and, if appropriate,

risk assessments for health effects of CO by January 28, 2011. EPA will then sign for

publication in the Federal Register notice of proposed rulemaking addressing the NAAQS for

CO by October 28, 2011; and notice of final action on the NAAQS proposal by July 27, 2012.

51. As detailed below, these are extremely ambitious schedules and represent the

minimum time reasonably necessary to complete each of the reviews, consistent with satisfying

applicable legal requirements and reaching sound and scientifically supportable decisions.

52. Attachment B presents timelines showing the various steps in the review process for

CO in graphic form, as well as the minimum amount of time EPA will need to complete each

step. The chart shows the tasks involved in the review of the NAAQS for CO. The functional

elements of a review (planning, science assessment, exposure/risk assessment, and policy

assessment/rulemaking) are listed to the left, and color-coded bars on the timelines correspond to

the tasks listed under each of those elements. As indicated at the bottom of each chart, the color-

coding identifies the entity (either one of several EPA offices or CASAC) with primary

responsibility for performing each task.

53.  The following paragraphs briefly describe the various tasks shown in the timeline charts, including for the sake of completeness several steps already underway or completed.

**Process and Schedule for Completion of CO NAAQS Review**

54.   **Planning**

- Calls for information.  EPA has prepared and published a Federal Register notice for CO formally initiating the current review of the air quality criteria and standards for CO and inviting submission of relevant scientific and technical papers for consideration in the review.  This notice was published on September 13, 2007 [72 FR 52369].

- Prepare NAAQS review plans.  Consistent with the revisions to the NAAQS process, EPA is planning to hold a "kick-off" workshop for the CO NAAQS review at the end of January 2008.  This workshop will provide an opportunity for experts to highlight critical on-going research in their respective disciplines and the availability (as published literature or in press manuscript version) of new information from these efforts, and it will facilitate an open dialogue on policy-relevant issues with discussions focused on health effects associated with CO exposure.  EPA is currently preparing an integrated planning document that will set forth the process and schedule for the review of the criteria and CO NAAQS; EPA's integrated plan for the CO NAAQS review will be informed by the discussions at the kick-off workshop.  Among other things, the document will identify a set of policy-relevant issues – i.e., those related to the indicator(s), form(s), averaging time(s), and level(s) of the standard -- to frame the science, exposure/risk, and policy assessments to be prepared.   It will also outline the projected scope of the exposure/risk assessment and provide an overview of the approach to be taken in the policy assessment (by integrating the results of the science and exposure/risk assessment) to produce policy options, possibly including ranges of alternative standards for the Administrator to consider.

  As discussed in the NAAQS Process Workgroup Report, this plan will allocate a larger proportion of the overall schedule than in previous reviews of the science and exposure/risk assessment; will more closely link this assessment through a more coordinated, consultative process, and will minimize the time between the completion of this assessment and reaching a proposed decision on the NAAQS.

- CASAC/public consultation on plans.  A draft of the review plan will be made available for consultation with CASAC and for public comment.  The emphasis on planning and on CASAC and public review of plans is expected to strengthen the overall effectiveness of the review process and avoid delays in the process.

- <u>Prepare final plans</u>. The EPA will prepare a final plan for this review, taking into account CASAC and public comments on the draft plan. This plan is targeted for completion in April 2008.

55. **Science Assessment**

- <u>Prepare workshop draft materials</u>. The EPA will prepare preliminary drafts of materials for the integrated science assessment and its annexes, intended to reflect review of all relevant scientific studies, for review at a peer review workshop. In final form, the integrated science assessment will consist of a concise evaluation, integration, and synthesis of the most policy-relevant science (with comprehensive annexes containing descriptive information) and will include key science judgments needed to develop the corresponding exposure/risk assessment.

- <u>Peer-review workshops</u>. EPA will hold a workshop for initial peer-review of the preliminary draft materials by highly knowledgeable experts in the particular subject areas covered. The workshop is necessary to assure that all relevant research has been identified and appropriately characterized, and to elicit and discuss differing views of its significance among experts in the pertinent disciplines. Such discussions are essential to ensure that EPA's evaluation and interpretation of the scientific information is scientifically sound and balanced.

- <u>Prepare first-draft Integrated Science Assessment</u>. Building on the preliminary draft prepared for the peer-review workshops, and taking into account input received at the workshops, EPA will prepare a first draft of the Integrated Science Assessment for CASAC and public review. This will involve addressing issues raised at the peer-review workshop and ensuring that the draft assessment reflects appropriate integration and synthesis of information from the different disciplines involved.

- <u>CASAC/public review of first-draft Integrated Science Assessment</u>. The first draft of the science assessment will be made available for review by CASAC and the public approximately 60 days in advance of a public meeting on the draft. At the meetings, CASAC members will offer their individual views and discuss key issues raised, leading to the formulation of initial written consensus advice and recommendations by CASAC. As with subsequent CASAC and public reviews of draft documents, the public will also be invited to submit written comments on the draft assessments to EPA and/or CASAC, and time will be made available at the CASAC meetings for public comments that can inform CASAC's deliberations.

- <u>Prepare second draft of Integrated Science Assessment</u>. Based on advice and recommendations from CASAC, and taking into account public comments, EPA will prepare a second draft of the Integrated Science Assessment for further CASAC and public review. As discussed below, EPA will release a first draft of the exposure/risk assessment report at approximately the same time so it can be

reviewed by CASAC and the public in conjunction with the draft science assessment on which it is based. This is an example of the early and close coordination between development of related documents, in this case the science assessment and the exposure/risk assessment, that will be provided for in the plans for the review.

- CASAC/public review of second draft. Given the need for evaluation and interpretation of available information on the effects of CO on human health, it is essential that CASAC and the public have an opportunity to evaluate and comment on EPA's responses to important critical comments made on review of the first draft. Past experience amply demonstrates that omitting this step would jeopardize the soundness of EPA's scientific review. The second draft will be made available for review by CASAC and the public approximately 60 days in advance of a public meeting.

  Based on past experience, EPA expects that all remaining key issues will be resolvable based on CASAC's deliberations and advice on the second draft, so that CASAC will be able to conclude its deliberations at these meetings and subsequently provide final advice to the Administrator that the revised document represents an adequate assessment of the available scientific information and provides an adequate scientific basis for making decisions on the CO NAAQS.

- Prepare final Integrated Science Assessment. Taking into account CASAC advice and public comments on the second draft, EPA will incorporate appropriate revisions into a final Integrated Science Assessment. EPA proposes to issue this document by May 2010 for the CO NAAQS review.

56. **Exposure/risk assessment.**

- Prepare exposure/risk assessment methodology document. Following the peer-review workshops and in conjunction with preparation of the first draft of the integrated science assessment, EPA will also prepare detailed a "scope and methods" plan that describes the proposed methodology for conducting a quantitative assessment of (1) human population exposures and (2) if the information is judged adequate to conduct quantitative risk assessments, the associated risks of sensitive population groups for CO.

  Proper planning and development of exposure/risk assessment methodologies for these reviews are critical, as they lay the foundation for the subsequent quantitative assessments of the risks associated with varying concentrations of the pollutants. Starting with a correct methodology is thus critical to timely development of this important information.

- CASAC/public consultation on exposure/risk assessment methodology. The draft methodology document for CO will be made available for review by CASAC and

the public approximately 45 days in advance of a public meeting, at which CASAC members will provide advice on the appropriateness and scientific soundness of the proposed methodologies. EPA intends to combine this meeting with the CASAC meeting on the first draft of the integrated science assessment, which will allow concurrent peer and public review of both the relevant scientific information and the proposed use of that information in the exposure/risk assessment.

- Prepare first-draft exposure/risk report.  Taking into account CASAC and public comments on the assessment methodology, as well as CASAC and public comments on the draft science assessment, EPA will conduct and document an assessment of human exposure to CO, and, if the information is judged adequate to conduct a quantitative risk assessment, of associated risks to public health of CO. The first draft of this report will be released at approximately the same time as release of the second draft integrated science assessment, so it can be reviewed by CASAC and the public in conjunction with the science assessment on which it is based. The first draft will focus on effects associated with current air quality and the second draft will focus on air quality scenarios that reflect attainment of alternative standards identified for consideration.

- CASAC/public review of first draft exposure/risk assessment report.  The draft exposure/risk assessment will be made available for review by CASAC and the public approximately 60 days in advance of a public meeting, at which CASAC will offer advice and recommendations as to the appropriateness and scientific soundness of the assessment.  EPA intends to combine this meeting with the CASAC meeting on the second draft of the integrated science assessment, which will again allow concurrent peer and public review of the closely related document.

- Prepare second draft exposure/risk assessment report.  Based on the final integrated science assessment, and taking into account CASAC and public comments on the first draft exposure/risk assessment report, EPA will prepare a second draft exposure/risk assessment report for CASAC and public review.  This step will be concurrent with EPA beginning work on the policy assessment for CO, which will allow concurrent consideration of exposure/risk-assessment results and their potential use in developing policy recommendations on ranges of alternative standards for the Administrator to consider.

- CASAC/public review of second draft exposure/risk assessment report.  The second-draft exposure/risk assessment report will be made available for review by CASAC and the public about 60 days in advance of the public meeting at which it will be reviewed.

- Prepare final exposure/risk assessment report.  Taking into account CASAC advice and public comments on the second draft, EPA will incorporate appropriate revisions into the final exposure/risk assessment report.  EPA proposes to issue this document January 28, 2011.

57.    **Policy assessment**

- Prepare policy assessment. Based on the information and judgments in the integrated science assessment and the results of the exposure/risk assessment, and taking into account CASAC and public comments on those documents, EPA will prepare a policy assessment and publish it as an ANPR for the CO NAAQS review. The ANPR will present preliminary analyses and conclusions as to whether revisions of the NAAQS are appropriate and, if revisions appear to be appropriate, ranges of alternative standards for the Administrator's consideration. EPA will begin preparation of this policy assessment concurrently with preparation of the second draft exposure/risk assessment, allowing concurrent development of both the possible alternative standards for consideration and EPA's assessment of the risks associated with each of them.

  The ANPR, will provide a preliminary basis for subsequent decisions on whether the existing standards should be revised and, if so, on the appropriate elements of any revised primary (health-based) or secondary (welfare-based) standards. These are the indicator(s) (*i.e.*, the specific definition of the pollutant to be addressed by a standard); the averaging time(s) (*e.g.*, 8-hour, monthly, quarterly averages); the form(s) (*i.e.*, the air quality statistic to be compared against the level of the standard); and the level(s) for any revised standards.

  Taking into account CASAC advice and public comments on the final exposure/risk assessments, EPA will prepare the ANPR by February 15, 2011 for the CO review.

- CASAC/public review of policy assessment. The ANPR will be published in the Federal Register for CASAC and public review approximately 60 days in advance of a public meeting. The focus of this review will be on whether EPA's preliminary analyses as to whether the existing standards should be revised and, if so, on whether the indicator(s), averaging time(s), form(s), and level(s) suggested for consideration by the Administrator, are each supported by the underlying scientific data. Again, EPA intends to combine this meeting with the meeting on the final exposure/risk assessment report, which will allow concurrent peer and public review of the closely related issues addressed in these documents.

58.    **Rulemaking**

*Proposed rulemaking*. This process necessarily includes the following steps:

- Prepare decision package. Based on the results of the final integrated science assessment, risk assessment, and policy assessment for each pollutant, EPA staff will prepare a regulatory decision packages for the Administrator's consideration.

The decision package will include recommendations on whether the existing standards should be revised and, if so, on the indicator(s), averaging time(s), form(s), and level(s) for revised standards, together with supporting rationale and appropriate alternatives raised during Agency, CASAC, or public review and the underlying basis for such alternatives. These documents will be coordinated with the other EPA offices involved (*e.g.*, the Office of Research and Development, other offices with related program responsibilities or expertise, and the Office of General Counsel) to assure that their views on key issues are appropriately reflected.

- <u>Decisions by Administrator</u>. For purposes of preparing a notice of proposed rulemaking, the Administrator must reach provisional decisions on each of the key issues for the rulemaking proposal raised in the decision package or in discussions of the package. If revisions of the standards appear to be appropriate, of particular importance will be determining appropriate levels for the primary and secondary NAAQS. The Administrator's decisions on these key questions will be particularly difficult given their significance in protecting the nation's public health and welfare and the scientific complexity of the issues involved.

- <u>Prepare draft Federal Register proposal notice</u>. Upon receipt of direction from the Administrator, EPA staff will prepare a draft proposed notice of rulemaking for publication in the Federal Register. As provided by section 307(d) of the Act, 42 U.S.C. § 7607(d), the notice will set forth the basis for the proposed decision and will provide for both a public comment period, during which the public may submit written comments, and an opportunity to present oral testimony at one or more public hearings.

- <u>Agency review</u>. The draft Federal Register notice will be subjected to formal, comprehensive Agency review to assure that it accurately reflects the available scientific and technical information, conform to the Administrator's proposed decision on each issue, and are legally defensible.

- <u>Issue Federal Register Notice of Proposed Rulemaking</u>. The Administrator will sign by October 28, 2011 the notice of proposed rulemaking for decisions on the CO NAAQS, for publication in the Federal Register.

***Final rulemaking.*** This process necessarily involves the following steps:

- <u>Public comment period and public hearing</u>. A 60-day period will be provided for submission of written comments on the proposal; the public will be appraised that EPA does not intend to consider requests for extensions to this comment period. Any public hearings to be held will be scheduled for approximately 30 days after the commencement of the comment period to allow time for the public to prepare oral testimony. As required by section 307(d)(5) of the Act, 42 U.S.C. § 7607(d)(5), the record of any public hearing will be kept open for 30 days after the

close of the proceeding for to provide an opportunity for submission of rebuttal and supplementary information.

- <u>Response to public comments</u>. EPA staff will review the public comments on the proposal, identify key issues that must be addressed, and prepare responses to comments as appropriate. A complete summary of significant comments and responses to them will be prepared prior to final action, as required by section 307(d)(6) of the Act.

- <u>Decisions by the Administrator</u>. Taking into account the public comments and any additional advice that may be provided by CASAC, the Administrator must reach final decisions on the NAAQS and on any associated monitoring and surveillance requirements.

- <u>Prepare draft Federal Register notice of final rulemaking</u>. EPA staff will prepare a draft notice for publication in the Federal Register that announce and explain the basis for the Administrator's final decisions on the CO NAAQS. As provided by section 307(d)(6)(A) of the Act, 42 U.S.C. § 7607(d)(6)(A), the notice will include the reasons for any major changes from the proposed decisions.

- <u>Agency review</u>. The draft Federal Register notices will be subjected to formal, comprehensive review within EPA.

- <u>Issue notices of final rulemaking</u>. The Administrator will sign the notice announcing and explaining final decisions on the CO NAAQS by July 27, 2012, for publication in the Federal Register.

59. As discussed above, each step in the above process has been scrutinized by EPA professional staff and senior managers knowledgeable in the NAAQS process to produce the shortest possible schedule for completing the CO NAAQS review. In EPA's judgment, none of the steps described can be omitted without violating applicable procedural requirements or jeopardizing the scientific soundness of the review, or both. The resulting schedule takes into account the nature and importance of the scientific and technical issues involved. It is EPA's judgment that imposition of a shorter schedule than the one presented in this Declaration would jeopardize its ability to make sound and scientifically supportable decisions in the current review.

60. It would be particularly harmful to the public interest to shorten the scientific assessment portion of the schedule by reducing the amount of time provided for preparation of science and exposure/risk assessments or by reducing the amount of time provided for CASAC and public review. In EPA's judgment, this would be very short-sighted. NAAQS decisions can have enormous consequences for society, and their legitimacy rests on the assurance that they are based on sound science and have been carefully considered. Given the serious nature of some of the health effects associated with exposures to CO these factors are especially important in reviewing the NAAQS for CO. To unduly restrict the CASAC's review role, or the public's, would not only jeopardize the scientific soundness of the standards, but very likely would lead to strong criticism from CASAC, the Science Advisory Board, the scientific community generally, various interest groups, and Congress. All have strongly expressed the need for rigorous review of the scientific basis for NAAQS decisions.

61. Aside from the above factors, EPA's proposed schedule also takes into account other very major NAAQS reviews (particulate matter, ozone, nitrogen dioxide, sulfur dioxide, and lead) that are already underway and subject to court-ordered deadlines. Although work on the CO NAAQS review will proceed concurrently with work on those reviews, some key members of the professional team will have responsibilities for all reviews, and all members will have responsibilities for more than one review. The proposed schedule must also be viewed in the context of the unusually large number of rulemakings and other significant actions for which the Office of Air and Radiation is responsible, including many subject to statutory or court-ordered deadlines and many in the same time frame as the CO NAAQS review. The spring 2007 issue of EPA's semi-annual "Agenda of Regulatory and Deregulatory Actions" includes a list of rulemakings and other significant actions scheduled for the next several years. As indicated in

that document, over one hundred rulemakings are currently scheduled to be initiated or finished

during the next twelve months alone by the Office of Air and Radiation.  *See* 72 Fed. Reg. 23,156,

23,160-164 (April 30, 2007).  As reflected in the Agenda, this office is responsible for the great

majority of rulemaking actions conducted by EPA.

      62.  As a result of these competing obligations, as well as strong budgetary pressures, the

Office of Air and Radiation has unusually limited ability to shift resources from other programs to

the CO NAAQS review.  The Office of Research and Development, which is responsible for

science assessments, operates under comparable constraints.  Indeed, continued careful attention

and diligence will be required of EPA management to assure that competing regulatory

obligations and fiscal constraints do not impact the review schedules presented in this Declaration.

      63.  Moreover, committing additional resources beyond those planned for to the CO

NAAQS review process would not effectively shorten the time necessary to complete it.  Key

members of the professional staff responsible for the review are specially qualified for the tasks

they perform, not merely by virtue of their training but, more significantly, as a result of the highly

relevant technical expertise and experience they have acquired in prior NAAQS reviews.  It would

be unrealistic to expect that other staff members or new hires could perform the same tasks

effectively without an extended period of learning, regardless of their background qualifications,

training, or experience.

      64.  In addition, the amount of time necessary to complete the CO NAAQS review is

largely dependent on the time necessary to allow review and comment by CASAC and the public,

to allow rigorous and thoughtful consideration of the scientific issues that are certain to arise in

the  review process, and to allow full management review and consideration of the key issues and

regulatory options identified in the regulatory development phase.  Given the significance of the

potential health effects, it is imperative and in the best interests of all concerned parties that the decision whether to revise the NAAQS be well-considered and based on a sound resolution of the underlying scientific issues.

65. It is also imperative that the air quality criteria for CO "accurately reflect the latest scientific knowledge," 42 U.S.C. § 7408(a)(2), and that any revised NAAQS for CO be fully defensible on judicial review. If the air quality criteria and NAAQS do not "accurately reflect the latest scientific knowledge," or if EPA does not comply with applicable procedures in revising them, the resulting standards would likely not withstand judicial scrutiny, leading to a remand to EPA for further consideration. If this occurred, the States' efforts to implement both the revised NAAQS and the prior NAAQS would very likely be disrupted during the period of uncertainty, possibly years, that would ensue pending a new agency decision on remand. As a result, the implementation of any additional control measures necessary to reduce the health risks posed by CO could be substantially delayed.

66. As previously indicated, the Administrator is firmly committed to completing the current review as rapidly as possible, consistent with satisfying applicable legal requirements and assuring a sound and scientifically supportable decision. EPA has recently completed a detailed review of its process for developing and reviewing the NAAQS in order to strengthen and expedite that process, and intends to use the steps recommended in that Report to expedite the CO NAAQS review. The schedule presented in this Declaration is extremely ambitious and represents the minimum time necessary to carry out that commitment. If EPA had to take final action on a shorter schedule, it would be forced to take procedural or analytical shortcuts that would jeopardize the soundness of the ultimate decision and its defensibility on judicial review. It is especially important to provide CASAC and the public sufficient opportunities for review and

comment, given the seriousness of the effects at issue in the decision and the degree to which its validity will depend on sound resolution of the underlying scientific issues.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this __6__ day of December, 2007 at Research Triangle Park, N.C.

STEPHEN D. PAGE
Director
Office of Air Quality Planning
    and Standards
United States Environmental Protection Agency



Legend:    Planning    Science Assessment    Risk and Policy Assessments, ANPR and Rulemaking    CASAC Review



Attachment B

# Draft Plan for the Review of the CO NAAQS

ORD/OAR   ORD/NCEA   OAR/OAQPS   CASAC