1    Shana Lazerow (State Bar No. 195491)
     Communities for a Better Environment
2    1440 Broadway Suite 701
     Oakland, California  94612
3    Telephone:  (510) 302-0430
     Facsimile:  (510) 302-0438
4    Email:  slazerow@cbecal.org

5    Attorneys for Plaintiff
     COMMUNITIES FOR A BETTER ENVIRONMENT

6
     Robert Ukeiley (State Bar No. 90056)
7    Pro Hac Vice
     LAW OFFICE OF ROBERT UKEILEY
8    435R Chestnut Street, Suite 1
     Berea, KY 40403
9    Telephone: (859) 986-5402
     Facsimile: (866) 618-1017
     Email: rukeiley@igc.org
10
     Attorney for Plaintiffs
11   COMMUNITIES FOR A BETTER ENVIRONMENT,
     ROCKY MOUNTAIN CLEAN AIR ACTION,
12   COALITION FOR A SAFE ENVIRONMENT, and
     PHYSICIANS FOR SOCIAL RESPONSIBILITY-LOS ANGELES

13

14
                    **UNITED STATES DISTRICT COURT**
15
                  **NORTHERN DISTRICT OF CALIFORNIA**
16
                    **SAN FRANCISCO DIVISION**
17

18   COMMUNITIES FOR A BETTER                  Case No. 07-03678
     ENVIRONMENT, ROCKY MOUNTAIN
19   CLEAN AIR ACTION, COALITION FOR
     A SAFE ENVIRONMENT, and
20   PHYSICIANS FOR SOCIAL                      REPLY MEMORANDUM OF POINTS
     RESPONSIBILITY-LOS ANGELES,                AND AUTHORITIES IN SUPPORT OF
21                                              PLAINTIFFS' MOTION FOR SUMMARY
                                                JUDGMENT
22              Plaintiffs,
                                                (Federal Clean Air Act, 42 U.S.C. §§ 7401 et.
23        v.                                    seq.)

24   UNITED STATES ENVIRONMENTAL
     PROTECTION AGENCY and STEPHEN L.
25   JOHNSON, as Administrator of the United    Date: February 22, 2008
     States Environmental Protection Agency     Time: 9:00 a.m.
                                                Place: Courtroom 2, 17th floor
26              Defendant

27

28

1    **I.    INTRODUCTION**

2           This is a Clean Air Act citizen suit by a coalition of public health, environmental

3    justice and community groups (collectively "Plaintiffs") against the United States

4    Environmental Protection Agency and its Administrator ("EPA") for EPA's failure to review

5
     and revise as necessary the study of the latest science, which EPA calls an Integrated Science
6
     Assessment, on adverse impacts from the air pollutant Carbon Monoxide and to review and
7
8    revise, as necessary, the National Ambient Air Quality Standard ("NAAQS") for Carbon

9    Monoxide.  EPA admits that it has violated its mandatory duty so liability is not at issue.  See

10   Defendants' Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment and In

11   Support of EPA's Cross-Motion for Summary Judgment Concerning Remedy ("EPA

12   Memo.") at 1.

13
            The only issue currently before the Court is the remedy, which both sides agree
14
     should take the form of a schedule for EPA to complete its review and make revisions, as
15
16   necessary.  Plaintiffs want a quicker, although still lengthy, schedule that includes interim

17   deadlines in light of EPA's abysmal history of complying with the Congressional mandate to

18   review and revise Integrated Science Assessments and NAAQS.  EPA wants a slower

19   schedule which at its core is based on the incorrect premise that Congress has given EPA five

20
     years to complete this mandatory duty and so EPA will take the five years, or at least four
21
     years and ten months.
22
23          Plaintiffs filed a motion for summary judgment.  EPA filed a combined opposition to

24   Plaintiffs' motion and cross-motion for summary judgment on the remedy.  Plaintiffs now

25   offer this reply memorandum, which technically also serves as an opposition to EPA's cross-

26   motion.

27

28

*CBE v. EPA*     Reply Memo P & A in Support of Plaintiffs' Motion for Summary Judgment

1  II.     ARGUMENT

2          A.      SINCE THE CONGRESSIONALLY MANDATED DEADLINE HAS

3                  PASSED, THE COURT MUST USE ITS EQUITABLE POWER TO

4                  REMEDY EPA'S ILLEGAL ACTION.

5

6          Regardless of the lengthy affidavits EPA submitting, it should be readily apparent

7  that EPA chose an end date approximately 5 years from when EPA started the review process

8  and then worked backwards, filling in dates for the Integrated Science Assessment, which is

9  referred to in the Clean Air Act as the "criteria," and a proposed rule or decision and then

10 filed in justifications.  See e.g. Declaration of Stephen D. Page at last page (graphically

11 representation of EPA's proposed schedule starting in September, 2007 and finishing in July,

12 2012).[1]  No court has every issued a decision granting such a lengthy schedule.  However,

13

14 EPA believes it is entitled to such a lengthy schedule because EPA believes Congress has

15 given EPA five years to complete its review and revisions, as necessary, of Integrated

16 Science Assessments and NAAQS.  EPA is mistaken.

17          Congress actually determined that EPA must finish its review and revisions, as

18 necessary, within five years of the previous review and decision on revisions.  See 42 U.S.C.

19

20 _____

21 [1] Plaintiffs note that EPA's reference to the consent decree in the nitrogen oxides and sulfur oxides
NAAQS deadline case is inappropriate.  See EPA Memo at 17-18.  EPA fails to explain how that
consent decree came to be.  In that case, the parties finished briefing summary judgment in July,

22 2006.  Unfortunately, and unbeknownst to Plaintiffs, Judge Penn was apparently very ill because
he passed away while the case was pending, having never ruled on the merits or Plaintiffs' motion

23 for expedited review.  The case was re-assigned to another judge in July of 2007, but at that point,
some of the deadlines Plaintiffs had requested had already passed.  The November 2007 Consent

24 Decree imposes its first deadline of July 2008.

25 EPA also fails to explain that because that case involved essentially three separate NAAQS
reviews, the Plaintiffs agreed to a staggered schedule to address EPA's concerns about

26 "bottlenecking" of work.  See Declaration of Stephen D. Page at second to last page (showing
staggered schedule for NOx health, SOx health, and a first-time, combined review of NOx and

27 SOx welfare).  This case does not present these same considerations.  Rather, Plaintiffs proposed
schedule would stagger then CO review in between the NOx and SOx welfare review and the PM

28 review.  See Id.

*CBE v. EPA*      Reply Memo P & A in Support of Plaintiffs' Motion for Summary Judgment

1    U.S.C. § 7409(d)(1).  Moreover, Congress explicitly stated that the "Administrator may

2    review and revise criteria [i.e. Integrated Science Assessments] or promulgate new standards

3    [i.e. NAAQS] earlier or more frequently than required under this paragraph."  Id.  EPA

4    admits that the last time it reviewed and revised the criteria and made a decision on whether

5    to revise the NAAQS was over 13 years ago on August 1, 1994.  See EPA Memo. at 8-9.

6    Thus, the deadline pursuant to 42 U.S.C. U.S.C. § 7409(d)(1) for the current review and

7    decision on revision was August 1, 1999, over 8 years ago.  Obviously, the Court cannot

8    order EPA to comply with the August 1, 1999 Congressionally mandated deadline.  Thus, the

9    issue for the Court is what is the appropriate deadline that the Court should impose using the

10   Court's equitable powers.  Congress has not answered that question for the Court.  EPA's

11   suggestion that Congress has determined that approximately 5 years is as quick a schedule as

12   possible for this task is completely countered by Congress explicitly stating that that

13   "Administrator may review and revise criteria [i.e. Integrated Science Assessments] or

14

15   promulgate new standards [i.e. NAAQS] earlier or more frequently than required under this

16   paragraph."  Thus, Plaintiffs' proposed schedule ending on February 11, 2011 is a perfectly

17   reasonable exercise of the Court's equitable powers for the reasons put forth in Plaintiffs'

18   Opening Memorandum and supporting expert affidavit.

19

20

21

22        **B.     THE COURT HAS THE EQUITABLE POWER TO IMPOSE
               INTERIM DEADLINES**

23        On page 19 – 23 of its Memorandum, EPA trots out its old argument that the Court

24   lacks the authority to impose interim deadlines even though EPA has consistently lost this

25   argument.  See e.g. Missouri Coalition for the Env't v. EPA, 4:04CV00660 ERW

26

27

28

1   2005 WL 2234579 (ED Mo)(Sept. 14, 2005 Memorandum and Order)(imposing deadlines

2   for drafts of Integrated Science Assessment and "Staff Paper")(attached as Ex. 1).   EPA is

3   incorrect about the limitations of this Court's power.

4       Federal courts are empowered to craft equitable remedies.  When a court is

5   addressing an issue of public interest, as with an environmental law, those powers are at their

6   peak.  As the Ninth Circuit recently observed,

7       '[w]here the public interest is involved, 'equitable powers assume an even broader
        and more flexible character than when only a private controversy is at stake.' "*United*
8       *States v. Alisal Water Corp.*, 431 F.3d 643, 654 (9th Cir.2005) (quoting *Porter v.*
        *Warner Holding Co.*, 328 U.S. 395, 398, 66 S.Ct. 1086, 90 L.Ed. 1332 (1946)).
9       Unless Congress provides otherwise, " '[c]ourts of equity may, and frequently do, go
        much farther both to give and withhold relief in furtherance of the public interest than
10      they are accustomed to go when only private interests are involved.' "*United States v.*
        *Coca-Cola Bottling Co. of L.A.*, 575 F.2d 222, 228 (9th Cir.1978) (quoting *United*
11      *States v. First Nat'l City Bank*, 379 U.S. 378, 383, 85 S.Ct. 528, 13 L.Ed.2d 365
        (1965)).
12

13

14  Northwest Environmental Defense Center v. Bonneville Power Admin., 477 F.3d 668, 680

15  (9th Cir. 2007).  It is hard to think of a case more in the public interest than this, where what

16  is at stake is whether everyone in the United States is subject to air pollution that can cause a

17  variety of injuries ranging from underweight babies to climate change.

18      Many courts have held that the district courts have jurisdiction to order completion of

19

20  interim tasks that are not specifically enumerated.  For example, in *Train*, the D.C. Circuit

21  stated explicitly that "[t]he authority to set enforceable deadlines both of an ultimate and

22  intermediate nature is an appropriate procedure for exercise of the court's equity powers to

23  vindicate the public interest." Natural Resources Defense Council v. Train, 510 F.2d 692,

24  704-705 (D.C. Cir. 1975). The D.C. District Court recently confirmed this ability of district

25

26  courts to impose interim deadlines in Clean Air Act citizen suits.  See Sierra Club v. Johnson,

27  444 F. Supp.2d 46, 52 (D.D.C. 2006).

28

*CBE v. EPA*      Reply Memo P & A in Support of Plaintiffs' Motion for Summary Judgment

1
2
3
4
5
6

Moreover, two District Courts have imposed interim deadlines when reviewing EPA's failure to review and revise as appropriate NAAQS and criteria for other pollutants. See Am. Lung Ass'n v. Browner, 884 F. Supp. 345, 348-49 (D.Az. 1994)(particulate matter NAAQS); Missouri Coalition for the Environment, Civil No. 4:04cv00660 ERW, 2005 WL 2234579 (E.D. Mo. Sept. 14, 2005)(lead NAAQS).

7
8
9
10
11
12
13
14
15

Because EPA can find no precedent to support its arguments against interim deadlines, the agency rests its argument on its interpretation of the language of the Clean Air Act citizen suit provision. The Clean Air Act's citizen suit provision allows citizens to bring suit "against the Administrator where there is an alleged failure … to perform any act or duty under this chapter which is not discretionary with the Administrator," and grants the district courts jurisdiction to "order the Administrator to perform such act or duty." 42 U.S.C. § 7604(a).  From this text, EPA concludes that the district courts' equitable powers are circumscribed in fashioning relief when presented with such a claim.

16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiffs agree that the district courts' jurisdiction is limited by 42 U.S.C. § 7604(a) to hearing those cases which allege the Administrator has not met its mandatory duties, but the fact that the jurisdiction of the court is extended to ordering the Administrator to "perform such act or duty," does not displace the courts' equitable authority to prescribe to EPA the manner, method and schedule of such performance.  To the extent Plaintiffs' were asking for a civil penalty in addition to an injunction to require compliance with a mandatory duty, Plaintiffs would indeed be stretching the limit of this Court's authority.  Here, however, Plaintiffs request that the Court order the Administrator to comply with the Clean Air Act by reviewing and deciding whether to revise the Carbon Monoxide criteria and NAAQS. Setting interim deadlines for a step that EPA itself acknowledges that it will take as part of the process will enable the public, Plaintiffs and the Court to monitor EPA's progress and

1  provide certainty as to the date the NAAQS review and revision will be complete.  Plaintiffs

2  do not ask that the Court exercise unlimited equitable discretion to impose remedies not

3  authorized by the Clean Air Act.  Plaintiffs only ask that the Court order completion of the

4  separate agency activities that are necessary to the whole.  Simply put, Plaintiffs ask that the

5  Court take steps to ensure that its order, and the law, is followed by an agency.

6  In deciding the appropriateness of this equitable relief, EPA comes before the Court

7  with a long history of non-compliance.  Plaintiffs are not aware of EPA ever completing a

8  review of a NAAQS and criteria in the time frame set forth by Congress.  As for Carbon

9  Monoxide, EPA is essentially *13 years* behind schedule.  Under EPA's proposed schedule,

10  we would have to wait almost two and a half years from now until we would be able to

11  ensure EPA is making progress towards accomplishing its mandatory duty.  If EPA got off

12  schedule, as they so often do, it would be difficult to fashion a meaningful solution at that

13  point.  Thus, the Court has the equitable power to include a deadline for the draft science

14  assessments and other interim steps and should include such deadlines in light of EPA's

15  abysmal record with this task and the serious public health consequences at stake.

16  Finally, EPA bases its schedule on deadlines to sign the proposed and final rules and

17  does not propose any mandatory obligation to forward these documents to the Office of the

18  Federal Register for publication.  The Clean Air Act provides for judicial review only based

19  on the date decisions are published in the Federal Register.  See 42 U.S.C. § 7607(b)(1).

20  Thus, an obligation for EPA to sign a document without a concurrent obligation to have the

21  item published in the Federal Register renders the obligation almost meaningless because it is

22  not subject to judicial review.  In addition, EPA has had long delays between signing rules

23  and having them published in the Federal Register.  See e.g. 70 Fed. Reg. at 25317 (May 12,

24  2005)(EPA's CAIR rule was signed March 10, 2005 but not published until over two months

1  later on May 12, 2005).  EPA should not be allowed to grant itself yet another extension by

2  not having to timely send its signed documents to the Federal Register.  Rather, whatever

3  deadlines the Court imposes should also require that EPA forward the relevant documents to

4  the Office of Federal Register within 10 days of signing.

5

6

7      **C.**       **WHILE THIS IS NOT THE TIME OR THE PLACE TO DECIDE THE**

8                 **FUTURE STANDARD, THERE IS ENOUGH EVIDENCE TO**

9                 **INDICATE THAT THE ONLY REASONABLE WAY TO ENSURE**

10                 **PROTECTION OF INNOCCENT BABIES AND OTHERS IS TO**

11                 **REQUIRE EPA TO ACT IN A RELATIVELY EXPEDITIOUS**

12                 **MANNER**

13

14       Finally, at various points, EPA addresses the substance of the Carbon Monoxide

15  NAAQS.  Plaintiffs will offer a few brief responses.  EPA says <u>average</u> Carbon Monoxide

16  concentrations in the United States are 2 parts per million ("ppm").  EPA Memo. at 2.  This

17  fact is cold comfort to those who live in places with above average Carbon Monoxide

18  concentrations.  NAAQS are designed to protect all of the people in the United States, not

19  just some.

20       Furthermore, EPA does not dispute that there is some evidence that adverse health

21  impacts occur a level below 2 ppm.  <u>See</u> <u>e.g.</u> Opening Br. at 13.  If the NAAQS should be

22  less than 2 ppm but the nationwide average concentration is 2 ppm, then we have a serious

23  public health issue on our hands.  It is extremely inequitable to make mothers, and mothers-

24  to-be, such as Plaintiffs' Member Erin Robertson, wait any longer than necessary to know if

25  they are endangering their babies or fetuses by the simple act of breathing.  As Ms.

26  Robertson explained:

27      I am extremely worried that continued exposure to carbon monoxide increases
    my risk of giving birth to a child with low birth weight. I will likely have

28      more children in the future, but I worry about the effects carbon monoxide
    pollution will have on my children.

*CBE v. EPA*    Reply Memo P & A in Support of Plaintiffs' Motion for Summary Judgment

1

2          I understand the federal government has delayed in reviewing current health
           standards for carbon monoxide to determine if they need strengthening. This
3          delay is upsetting.

4          If the federal government were to make carbon monoxide standards more
           protective, I believe my family and I, and the rest of the Denver metropolitan
5          region, would be exposed to less carbon monoxide. If the federal government
           were to review and revise carbon monoxide standards, I would feel safe and
6          more assured that my child, and any future children, will have a chance to
           grow up healthy and happy. Because the government has not undertaken its
7          required review and revision of carbon monoxide health standards, I do not
           feel safe or assured. . . .
8

9          Even if the Denver metropolitan region meets any new health standards, I
           would still benefit by having more accurate information with which to assess
10         the risks to my family and I.

11    See Declaration of Erin Robertson in Support of Plaintiffs' Motion for Summary Judgment

12   at para 9 – 12.

13

14   **III.    CONCLUSION**

15         Therefore, for the reasons explained above and in the Opening Memorandum,

16   Plaintiffs respectfully request that the Court order EPA comply with the schedule in

17   Plaintiffs' proposed order.

18

19                                      Respectfully submitted,

20                                      /s Robert Ukeiley

21                                      _____
                                        Robert Ukeiley
22                                      Attorney for Plaintiffs
                                        COMMUNITIES FOR A BETTER ENVIRONMENT
23                                      ROCKY MOUNTAIN CLEAN AIR ACTION
                                        COALITION FOR A SAFE ENVIRONMENT
24                                      PHYSICIANS FOR A SOCIAL RESPONSIBILITY –
                                        LOS ANGELES
25

26                                      Shana Lazerow
                                        Attorney for Plaintiff
27                                      COMMUNITIES FOR A BETTER ENVIRONMENT

28   Dated:  January 4, 2008

---

*CBE v. EPA*      Reply Memo P & A in Support of Plaintiffs' Motion for Summary Judgment

1

2                                   <u>CERTIFICATE OF SERVICE</u>

3          On January 4, 2008, a copy of the foregoing was served electronically

4   via the Court's e-filing system to Counsel of Record.

5

6

7

8                                        /s Robert Ukeiley

                                   _____
9                                        Robert Ukeiley

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28