SCOTT N. SCHOOLS
Acting United States Attorney
CHARLES M. O'CONNOR (CA State Bar No. 56320)
Assistant United States Attorney
450 Golden Gate Ave., 10th Floor
San Francisco, California 94102
Tel:    (415) 436-7180

RONALD J. TENPAS
Assistant Attorney General
Environment and Natural Resources Division
PAMELA S. TONGLAO
Trial Attorney
U.S. Department of Justice
Environmental Defense Section
P.O. Box 23986
Washington, D.C. 20026-3986
Tel:    (202) 305-0897
Fax:    (202) 514-8865
Email: pamela.tonglao@usdoj.gov

ATTORNEYS FOR DEFENDANTS

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| COMMUNITIES FOR A BETTER ENVIRONMENT, ROCKY MOUNTAIN CLEAN AIR ACTION, COALITION FOR A SAFE ENVIRONMENT, and PHYSICIANS FOR SOCIAL RESPONSIBILITY-LOS ANGELES,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, and STEPHEN L. JOHNSON, Administrator of the United States Environmental Protection Agency,<br><br>Defendants. | Case No. C 07-3678 JSW<br><br>EPA'S REPLY IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT ON REMEDY<br><br>Date: February 22, 2008<br>Time: 9:00 a.m.<br>Place: Courtroom 2, 17th floor |

# INTRODUCTION

For the reasons set forth below and in EPA's principal brief, the remedy proposed by EPA is not only the more reasonable of the two remedies presented to the Court, it is also the only one that (1) is supported by evidence demonstrating that it will allow EPA to complete a scientifically and legally defensible review of the air quality criteria and national ambient air quality standard ("NAAQS") for carbon monoxide ("CO"), and (2) secures compliance with the statute within the bounds of the applicable waiver of sovereign immunity.

# ARGUMENT

## I. EPA'S PROPOSED SCHEDULE IS REASONABLE.

EPA's schedule reflects the minimum amount of time necessary to conduct a review and any appropriate revision of the CO NAAQS that the Agency believes will satisfy applicable legal requirements and lead to scientifically supportable conclusions. *See* Page Decl. ¶ 51. Plaintiffs, on the other hand, acknowledge that their proposal for a shorter schedule is based on a desire to compensate for what they characterize as "EPA's abysmal history" in reviewing and revising the CO NAAQS. *See* Pl. Reply In Support of Motion for Summary Judgment ("Pl. Reply," Docket No. 32) at 2, 7. The Court should not accede to Plaintiffs' wish to punish EPA for its past delay. *See United Steelworkers of America v. Rubber Mfrs. Ass'n*, 783 F.2d 1117, 1120 (D.C. Cir. 1986) (declining to "punish OSHA for its past delay by imposing a mandatory, accelerated timetable" and emphasizing that ultimate action required the agency to "deal with a host of complex scientific and technical issues"). "A simple reading of the Clean Air Act reveals that whether to impose a certain type of regulation often involves complex scientific, technological, and policy questions. EPA must be afforded the amount of time necessary to analyze such questions so that it can reach considered results in a final rulemaking that will not be arbitrary and capricious or an abuse of discretion." *Sierra Club v. Thomas*, 828 F.2d 783, 798 (D.C. Cir. 1987). *See also NRDC v. New York*, 700 F. Supp. 173, 181 (S.D.N.Y.1988) (recognizing "the necessity of dealing with the issues on a pragmatic basis" and allowing EPA administrator "a reasonable period of time" to comply with mandatory statutory duty). The public interest would be ill-served if EPA were to hastily issue a revised CO standard based on an abridged review of

the air quality criteria and existing standard.

In their reply brief, Plaintiffs still have not explained why it is reasonable to expect EPA to prepare a final risk/exposure assessment at the same time it is completing an assessment of the science underlying such an assessment. Similarly, Plaintiffs state that the schedule for review of the NOx and SOx standards was staggered to avoid a "'bottlenecking' of work" but contend that such concerns are not present here. Pl. Reply at 3, n.1. Plaintiffs' representation that their proposed schedule would "stagger the CO review in between the NOx and SOx welfare review and the PM review," *id.*, is not borne out by EPA's master timeline for the NAAQS reviews for all pollutants, which shows that EPA intends to issue a final integrated science assessment ("ISA") for particulate matter in September 2009. *See* Attachment A to the Declaration of Stephen D. Page in Support of EPA's Cross-Motion for Summary Judgment ("Page Declaration," Docket No. 31, Ex. 2). Plaintiffs' proposed September 1, 2009 deadline for EPA to issue a final ISA for CO is unrealistic; a bottleneck would be unavoidable with those two deadlines so close together. The same EPA office cannot realistically prepare these two significant documents, pursuant to two nondiscretionary duties, at the same time without affecting the quality of both final products.[1] For these reasons, Plaintiffs' proposed schedule is unreasonable and should be rejected by the Court. *See Sierra Club v. Thomas*, 828 F.2d at 797 ("Because 'a court is in general ill-suited to review the order in which an agency conducts its business,' we are properly hesitant to upset an agency's priorities by ordering it to expedite one specific action, and thus to give it precedence over others.") (Citations omitted).

Moreover, Plaintiffs make no effort to reconcile the internal inconsistencies between the February 11, 2011 deadline request in their brief and the 39-month schedule outlined by their expert David Howekamp. As EPA noted in its principal brief, Mr. Howekamp's schedule is based on an incorrect starting date of April 26, 2007, instead of September 13, 2007 (the date Plaintiffs concede should be used). *See* EPA Mem. In Support of Its Cross-Motion for Summary

---

[1]  As EPA pointed out in its principal brief, the most recent criteria document (now known as an ISA) for lead is over 2000 pages long. EPA Mem. In Support of Its Cross-Motion for Summary Judgment on Remedy ("EPA Br.," Docket No. 31) at 4.

Judgment on Remedy ("EPA Br.," Docket No. 31) at 18 n.13. This is a material error; it caused Mr. Howekamp to shorten the time allotted for the integrated science assessment based on his assumption that "EPA should have used the past 7 months to begin preparation of workshop materials and the draft support document in parallel with preparation of the planning documents." Howekamp Decl. ¶ 7. Moreover, Plaintiffs' proposed schedule, which begins on September 13, 2007 and ends on February 11, 2011, spans 41 months, not 39 months, as Plaintiffs contend. Pl. Opening Br. (Docket No. 22) at 8. When an additional five months are included to correct for Mr. Howekamp's mistake as to the starting date, Plaintiffs' schedule covers 46 months.

EPA has proposed a 58-month schedule and has explained in detail how that time will be allocated to various tasks. After correcting for Mr. Howekamp's erroneous starting date, there is a 12-month difference between what the parties propose as reasonable for EPA to review and make any appropriate revisions to the CO NAAQS. Allowing EPA the benefit of an additional 12 months to complete its rulemaking would result in an improvement in the final rule that exceeds any perceived harm to Plaintiffs. Aside from Plaintiffs' sweeping claims about the "serious public health consequences at stake" and the "protection of innocent babies," Pl. Reply at 7-8,[2]/ Plaintiffs fail to explain why an accelerated rulemaking proceeding, which would force EPA to forego important steps in the development of any appropriate revisions to the criteria and standard, is sensible. EPA's nondiscretionary duty to review the CO NAAQS is no less important than its concomitant obligations to review the NAAQS for other pollutants pursuant to section 109(d)(1) of the Clean Air Act, and all of these reviews necessarily involve considerations of public health. *See Sierra Club v. Thomas*, 828 F.2d at 798 ("whether the public health and welfare will benefit or suffer from accelerating this particular rulemaking depends crucially upon the competing priorities that consume EPA's time, since any acceleration here

---

[2]/   Plaintiffs do not acknowledge the existence of studies that show an absence of any correlation between low ambient concentrations of CO and health effects. *See* Declaration of Mary Ross in Support of EPA's Cross-Motion for Summary Judgment (Docket No. 31, Ex. 3) ¶4.

may come at the expense of delay of EPA action elsewhere").

## II. A COURT ORDER IMPOSING INTERIM DEADLINES IS NOT APPROPRIATE.

### A. Plaintiffs Fail to Identify An Applicable Waiver of Sovereign Immunity for a Remedy that Includes Interim Deadlines.

Plaintiffs do not refute EPA's argument that there is no waiver of sovereign immunity that permits the Court to fashion a remedy that imposes deadlines for intermediate actions. Nor do Plaintiffs cite any case in which a court has analyzed whether sovereign immunity bars relief in the form of interim deadlines when an agency has failed to perform a nondiscretionary duty.[3]/ Instead, Plaintiffs assume that the Court has "equitable authority to prescribe to EPA the manner, method, and schedule of such performance." Pl. Reply at 6. As an initial matter, Plaintiffs may not resort to equitable principles to avoid the jurisdictional bar of sovereign immunity. *See U.S. v. BNS Inc.*, 858 F.2d 456, 462 (9th Cir. 1988) ("Congress may specifically limit available remedies in defining the jurisdiction of a federal court."); *Beller v. Middendorf*, 632 F.2d 788, 796 (9th Cir. 1980) ("Unless sovereign immunity has been waived or does not apply, it bars equitable as well as legal remedies against the United States.").

The Clean Air Act ("CAA") does not provide Plaintiffs with any right to equitable relief vis-à-vis past agency inaction; it merely gives them a cause of action to seek judicial enforcement of the Agency's present duties. Plaintiffs readily agree – in the first sentence of their reply brief – that there are only two present duties that they seek to enforce:

> This is a Clean air Act citizen suit . . . for EPA's failure to review and revise as necessary the study of the latest science, which EPA calls an Integrated Science Assessment, on adverse impacts from the air pollutant Carbon Monoxide and to review and revise, as necessary, the National Ambient air Quality Standard ("NAAQS") for Carbon Monoxide.

Pl. Reply at 2. Plaintiffs cannot engraft additional remedies, for which there is no waiver of sovereign immunity, onto those specifically provided by Congress because "a court sitting in

---

[3]/ Instead of refuting EPA's sovereign immunity argument on the merits, Plaintiffs fault EPA for "rest[ing] its argument on its interpretation of the language of the Clean Air Act citizen suit provision." Pl. Reply at 6. Plaintiffs' criticism is misplaced. It is well-established that "the starting point in interpreting the extent of a waiver of sovereign immunity is the text of the statute." *Henderson v. United States*, 517 U.S. 654, 674 (1996).

equity cannot 'ignore the judgment of Congress, deliberately expressed in legislation.'" *United States v. Oakland Cannabis Buyers Cooperative*, 532 U.S. 483, 496 (2001) (quoting *Virginian R. Co. v. Railway Employees*, 300 U.S. 515, 551 (1937)).

> Courts have limited authority to impose procedural requirements upon a federal agency which seeks to exercise the responsibilities committed to it by Congress. A history of statutory and decisional law cautions "reviewing courts against engrafting their own notions of proper procedures upon agencies entrusted with substantive functions by Congress." *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.*, 435 U.S. 519, 525, 98 S.Ct. 1197, 1202, 55 L.Ed.2d 460 (1978). In the absence of constitutional constraints or extremely compelling circumstances a court may not fashion procedural obligations beyond those explicitly enumerated in the pertinent statutes. *Id.* at 525, 543, 558.

*Wilderness Soc'y v. Tyrrel*, 918 F.2d 813, 816 (9th Cir. 1990). *See also Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 65 (2004) ("when an agency is compelled by law to act within a certain time period, but the manner of its action is left to the agency's discretion, a court can compel the agency to act, but has no power to specify what the action must be."); *Adkins v. Trans-Alaska Pipeline Liability Fund,* 101 F.3d 86, 89 (9th Cir. 1996) ("absent constitutional constraints or extremely compelling circumstances, we defer to an administrative agency's fashioning of procedures").

The case upon which Plaintiffs chiefly rely – *Northwest Environmental Defense Center v. Bonneville Power Admin.*, 477 F.3d 668 (9th Cir. 2007) – directly supports the sovereign immunity arguments that EPA advanced in its principal brief. There, the Ninth Circuit recognized that a district court's equitable powers may be circumscribed by statute. Specifically, the Ninth Circuit stated that, "*[u]nless Congress provides otherwise*," courts may grant broader equitable relief when public interests are at stake. *Northwest Envt'l Def. Ctr.*, 477 F.3d at 680 (emphasis added). Here, the crux of EPA's argument is that Congress has "provided otherwise" in the Clean Air Act citizen suit provision by only authorizing district courts to order the Administrator to perform the nondiscretionary act or duty. *See* 42 U.S.C. § 7604(a)(2). The statute's establishment of a single remedy constitutes a limited waiver of sovereign immunity that precludes courts from imposing any other remedy. Any doubt as to the scope of the district court's remedial authority is resolved by the Ninth Circuit's affirmation that "when a party seeks redress because an agency has failed to act, a court may only require the agency to perform

non-discretionary actions that the agency is required by law to undertake." *Northwest Envt'l Def. Ctr.*, 477 F.3d at 681 n.10 (citing *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55) (emphasis added).[4]/ Here, any injunctive order that does more than impose a deadline for EPA to complete a review and any necessary revision of the CO NAAQS as required by section 109(d)(1) of the Clean Air Act, 42 U.S.C. § 7409(d)(1), would be inappropriate both because it would extend beyond the *specific* authority conferred by Congress on the Court to enforce any failure by EPA to comply with a non-discretionary CAA duty and because it would violate principles of waivers of sovereign immunity.

### B. Even Under the Traditional Principles of Equity Upon Which Plaintiffs Rely, the Court Should Not Order Relief Beyond That Authorized by Statute.

Although the sovereign immunity analysis should be dispositive of Plaintiffs' request for interim deadlines, it should be noted that such deadlines are not available even under the traditional principles of equity upon which Plaintiffs rely. In other words, not only would such relief exceed the Court's statutory authority, it would also exceed the Court's equitable authority. It is well-established that the equitable relief that a district court may grant should be no broader than that necessary. *See Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994). "[A]n injunction must be narrowly tailored to give only the relief to which plaintiffs are entitled." *Orantes-Hernandez v. Thornburgh*, 919 F.2d 549, 558 (9th Cir. 1990). Moreover, "injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Id.* (citing *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979). *See also Lands Council v. McNair,* 494 F.3d 771, 784 (9th Cir. 2007) (Smith, J., concurring). Here, the CAA requires EPA to review the air quality criteria for carbon monoxide, review the CO NAAQS, and make such revisions in such criteria and promulgate such new standards as may be appropriate.

---

[4]/     Likewise, Plaintiffs' other cases provide little if any support for their request for interim deadlines. *Natural Res. Def. Council v. Train* 510 F.2d 692 (D.C. Cir. 1975), cited on page 5 of Plaintiffs' Reply Brief, is of doubtful authority on this point as it predates not only *Norton* but even *Vermont Yankee*. Plaintiffs' reliance on *Sierra Club v. EPA*, 444 F. Supp. 2d 46 (D.D.C. 2006), is unhelpful because, in that case, the court staggered deadlines for different final rules that were overdue, but did not impose deadlines for proposed rules, much less for interim steps not required under any statute, as Plaintiffs seek here.

42 U.S.C. § 7409 (d)(1). An order that sets forth deadlines for accomplishing these statutorily-mandated tasks would provide complete relief to Plaintiffs.

Nonetheless, Plaintiffs request that the Court set deadlines for EPA to complete various interim tasks beyond the obligations required by statute, including: (1) completion of a science assessment support document by April 14, 2008,[5] and (2) completion of the risk/exposure assessment "in parallel with the science assessment." *See* Pl. Opening Br. (Docket No. 22) at 8.[6] EPA agrees that this Court may consider the amount of time needed to complete interim tasks in the context of determining a reasonable amount of time for EPA to perform its statutorily required duties. However, an order that sets deadlines for EPA to perform intermediate tasks is in no way "necessary to provide complete relief to the plaintiffs." *Califano*, 442 U.S. at 702. Such an order would be overbroad and would exceed the Court's equitable authority. *See U.S. v. BNS*, 858 F.2d at 460 (district court's overbroad injunction "constituted an abuse of discretion").

Further, an order mandating that EPA perform intermediate tasks that are not required by statute would improperly intrude upon the administrative province of the Agency. The Supreme Court has stated: "As we have repeated time and again, an agency has broad discretion to choose how best to marshal its limited resources and personnel to carry out its delegated responsibilities." *Massachusetts v. EPA*, 127 S. Ct. 1438, 1459 (2007). Under the fundamental tenets of administrative law, EPA must retain the flexibility to adjust its approach as

---

[5] For the sake of clarification, EPA notes that its current procedures no longer call for the "science assessment support document" that Plaintiffs describe. As explained in the Page Declaration, EPA has revised the science assessment process to focus on development of the integrated science assessment (ISA). In lieu of publishing a separate support document, EPA now includes detailed summaries and analyses of studies as annexes to the ISA. EPA has implemented this approach in connection with the ISA for Oxides of Nitrogen – Health Criteria and the ISA for Sulfur Oxides – Health Criteria, which were released in August and September of 2007, respectively. Hence in this review, as described in the Declaration of Stephen Page at ¶ 55, EPA intends to issue one document – an integrated science assessment document with annexes – not two.

[6] Plaintiffs' also initially asked for a deadline for "all tasks necessary for implementation," Pl. Opening Br. (Docket No. 22) at 8, but offer no justification for that claim under the statute in their motion or briefing papers.

circumstances warrant. *See Inland Empire Public Lands Council v. Schultz*, 992 F.2d 977, 981 (9th Cir. 1993) (courts "will not second-guess methodological choices made by an agency in its area of expertise"); *Oil, Chem. and Atomic Workers Int'l Union v. Zegeer*, 768 F.2d 1480, 1488 (D.C. Cir. 1985) ("The difficulty and uncertainty inherent in the venture caution us against second-guessing [the agency's] judgment that its ultimate disposition will be facilitated by including in the rulemaking process a preproposal draft stage.").[7/] Here, an order binding EPA to a specific process would improperly interfere with EPA's discretion in carrying out the task Congress entrusted to the Agency. By imposing intermediate deadlines, the Court would effectively usurp EPA's expressly delegated authority, thereby violating fundamental separation of powers principles.

One of the cases cited by Plaintiffs – *Missouri Coalition for the Environment v. EPA*, No. 4:04-cv-660, 2005 WL 2234579 (E.D. Mo. Sept. 14, 2005) – aptly illustrates how such a situation unnecessarily entangles the court in internal agency procedures and implicates broader federal concerns regarding the separation of powers. That case involved EPA's obligation to review and revise, if appropriate, the NAAQS for lead. *Id.* at *1. The district court ordered EPA to meet interim deadlines, including a deadline of November 1, 2007, for finalizing a staff paper. *Id.* at *4. During the course of EPA's rulemaking, EPA undertook a comprehensive reexamination of the process for reviewing and revising the NAAQS, as described in the Page Declaration (attached to EPA's principal brief) ¶¶ 21-25.3. EPA ultimately adopted a series of measures to streamline and strengthen the NAAQS review process. *Id.* As part of the new approach, EPA determined that it would no longer issue a policy assessment in the form of a staff paper; instead, the policy assessment would be presented as an advance notice of proposed

---

[7/] Even before the Supreme Court clarified in *Lane v. Pena*, 518 U.S. 187 (1996), that sovereign immunity bars the imposition of remedies that are not prescribed by statute, courts recognized that their role was to ensure ultimate compliance with the statute while "[leaving] the substance and manner of achieving that compliance entirely to the EPA." *Alaska Ctr. for Env't v. Browner*, 20 F.3d 981, 986-87 (9th Cir. 1994) (emphasizing that district court "[was] mindful not to intrude upon the agency's realm of discretionary decision making"). *Accord Mobay Chem. Corp. v. Gorsuch*, 682 F.2d 419, 427 (3d Cir. 1982) (ordering EPA simply to "take all necessary steps" in order to promulgate appropriate regulations within six months).

1  rulemaking. *Missouri Coalition for the Environment v. EPA*, No. 4:04-cv-660, slip op. at 1-2,
2  (E.D. Mo. Aug. 24, 2007) (memorandum and order denying def's motion for partial relief from
3  judgment) (attached hereto as Exhibit 1). In an effort to conform its ongoing review of the lead
4  NAAQS to the new procedure, EPA unsuccessfully sought relief from the district court's
5  judgment by filing a motion pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure,
6  which allows a district court to relieve a party from a final judgment for "any . . . reason
7  justifying relief from the operation of the judgment." Fed. R. Civ. P. 60(b)(6). *Missouri*
8  *Coalition for the Environment v. EPA*, No. 4:04-cv-660, slip op. at 2-3, (E.D. Mo. Aug. 24,
9  2007) (memorandum and order denying defendant's motion for partial relief from judgment).
10 The district court denied EPA's motion, citing Eighth Circuit case law that requires a showing of
11 "exceptional circumstances" as a prerequisite for granting relief from a judgment. *Id.* at 3. In
12 doing so, however, the district court effectively abrogated EPA's discretionary authority to
13 manage its internal procedures and supplanted that discretion with judicial oversight based on a
14 standard of "exceptional circumstances." These events put the district court in the untenable
15 position of micro-managing the Agency's efforts, something courts are generally loath to do.
16 *See, e.g., Inland Empire Public Lands Council*, 992 F.2d at 981. The process of seeking judicial
17 approval to effectuate a change in methodology was unduly burdensome to EPA as well. It
18 required the Agency to divert resources from the ultimate task of reviewing and revising the
19 NAAQS for lead. Moreover, the process introduced uncertainty, pending resolution of EPA's
20 motion, as to what was required of the Agency.
21      Finally, EPA's need for discretion to fashion procedures is at its zenith when courts direct
22 the Agency to act in a shortened period of time. Here, if the Court requires EPA to perform its
23 nondiscretionary duty in less time than the Agency has proposed, EPA management will need to
24 exercise its best scientific judgment and technical expertise, in consultation with the Clean Air
25 Scientific Advisory Committee and after public comment, to consider what elements of the
26 review process should be curtailed or omitted in order to comply with the Court's ultimate
27 deadline. The Court should refrain from specifying interim deadlines because doing so would
28

interfere with EPA's ability to comply with the Court's own order.[8]/

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's motion for summary judgment, grant EPA's cross-motion for summary judgment, and enter an order consistent with the proposed order submitted by EPA.

                Respectfully submitted,

                RONALD J. TENPAS
                Assistant Attorney General
                Environment & Natural Resources Division

Date: January 25, 2008      /s/ Pamela S. Tonglao
                PAMELA S. TONGLAO
                Trial Attorney
                United States Department of Justice
                Environmental Defense Section
                P.O. Box 23986
                Washington, D.C. 20026-3986
                Tel:   (202) 305-0897
                Fax:  (202) 514-8865
                Email: pamela.tonglao@usdoj.gov

                ATTORNEYS FOR DEFENDANTS

OF COUNSEL:

DAVID P.W. ORLIN
Air and Radiation Law Office
Office of General Counsel
U.S. Environmental Protection Agency
Mail Code 2344A
1200 Pennsylvania Avenue, N.W.
Washington, DC 20460

---

[8]/    To the extent the Court believes some further safeguard is necessary to ensure that the NAAQS review remains on schedule, EPA respectfully submits that interim status reports can serve that purpose. Similarly, EPA believes it is unnecessary to impose a deadline for sending the signed notice of proposed and/or final rulemaking to the Office of Federal Register for publication. However, EPA would have no objection to a reasonable deadline, such as ten business days, from the date on which the Administrator signs the final rule.

CERTIFICATE OF SERVICE

On January 25, 2008, a true and correct copy of the foregoing was served electronically via the Court's e-filing system to Counsel of Record.

      /s/ Pamela S. Tonglao
PAMELA S. TONGLAO

| | |
|---|---|
| 1 | |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | Exhibit 1 |
| 10 | *Missouri Coalition for the Environment v. EPA*, No. 4:04-cv-660 (E.D. Mo. Aug. 24, 2007) (memorandum and order denying def's motion for partial relief from judgment) |

Exhibit 1

*Missouri Coalition for the Environment v. EPA*, No. 4:04-cv-660 (E.D. Mo. Aug. 24, 2007) (memorandum and order denying def's motion for partial relief from judgment)