**United States District Court**
For the Northern District of California

1
2
3
4
5
6             IN THE UNITED STATES DISTRICT COURT
7
8             FOR THE NORTHERN DISTRICT OF CALIFORNIA

9  COMMUNITIES FOR A BETTER
   ENVIRONMENT, et al.
10                                              No. C 07-03678 JSW
            Plaintiffs,
11
       v.
12                                              **ORDER RE CROSS-MOTIONS**
   U.S. ENVIRONMENTAL PROTECTION               **FOR SUMMARY JUDGMENT**
13 AGENCY, et al.

14          Defendants.
                                          /
15

16      Now before the Court is the motion for summary judgment filed by plaintiffs

17 Communities for a Better Environment, Rocky Mountain Clean Air Action, Coalition for a Safe

18 Environment, and Physicians for Social Responsibility - Los Angeles (collectively, "Plaintiffs")

19 and the cross-motion for summary judgment filed by defendant United States Environmental

20 Protection Agency and Stephen L. Johnson, as Administrator of the United States

21 Environmental Protection Agency ("EPA"). Having carefully reviewed the parties' papers, the

22 relevant legal authority, and having good cause, the Court grants Plaintiffs' motion for summary

23 judgment and denies the EPA's cross-motion for summary judgment.

24                              **BACKGROUND**

25      Plaintiffs have brought this action under the citizen suit provision of the Clean Air Act,

26 42 U.S.C. § 4701, *et seq.*, to compel the EPA to review, and if appropriate, revise the existing

27 air quality criteria and national ambient air quality standards ("NAAQS") for carbon monoxide

28 ("CO"). The Clean Air Act directs the EPA to review these published criteria and standards

every five years. 42 U.S.C. § 7409(d)(1). It is undisputed that the EPA has missed this deadline. The EPA last reviewed the NAAQS for CO in 1994. (Declaration of Stephen D. Page ("Page Decl.") at ¶¶ 39, 40.) The parties only dispute what the type of remedy the Court may provide.

The Court shall address additional facts as necessary to its analysis in the remainder of this Order.

## ANALYSIS

**A.    Legal Standards Applicable to Motions for Summary Judgment.**

A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-24 (1986). Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. An issue of fact is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A fact is "material" if it may affect the outcome of the case. *Id.* at 248. If the party moving for summary judgment does not have the ultimate burden of persuasion at trial, that party must produce evidence that negates an essential element of the non-moving party's claims, or that party must show that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once the moving party meets his or her initial burden, the non-moving party must go beyond

2

1  the pleadings and, by its own evidence, "set forth specific facts showing that there is a genuine
2  issue for trial." Fed. R. Civ. P. 56(e).

3      In order to make this showing, the non-moving party must "identify with reasonable
4  particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275,
5  1279 (9th Cir. 1996). In addition, the party seeking to establish a genuine issue of material fact
6  must be sure to point a court to the evidence precluding summary judgment because a court is
7  "'not required to comb the record to find some reason to deny a motion for summary
8  judgment.'" *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1029 (9th Cir.
9  2001) (quoting *Forsberg v. Pacific Northwest Bell Telephone Co.*, 840 F.2d 1409, 1418 (9th
10 Cir. 1988)). If the non-moving party fails to point to evidence precluding summary judgment,
11 the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

12 **B.     The Parties' Cross-Motions for Summary Judgment.**

13     The Clean Air Act requires the EPA to conduct formal reviews of NAAQS to ensure
14 that the EPA standards reflect the latest scientific knowledge and fully protect the public. 42
15 U.S.C. §§ 7408, 7409; *see also American Lung Ass'n v. Browner*, 884 F. Supp. 345, 346 (D.
16 Ariz. 1994). The EPA is required to conduct these reviews of and revise, if appropriate, the
17 NAAQS for certain air pollutants, such as CO, every five years. 42 U.S.C. § 7409(d). The
18 EPA's duty to do so is a non-discretionary, statutory duty. *Id.*; *see also American Lung Ass'n*,
19 884 F. Supp. at 346. Despite this mandatory deadline, the last time EPA reviewed the NAAQS
20 for CO was in 1994. (Page Decl., ¶¶ 39, 40.)

21     The EPA concedes that it is in violation of its statutory duty to review, and if
22 appropriate, revise, the NAAQS for CO. The parties simply disagree as to how much time the
23 EPA should be provided to comply with this statutory obligation. Summary judgment is
24 appropriate where, as here, the only issue for the Court to address is to fashion an equitable
25 remedy. *See American Lung Ass'n*, 884 F. Supp. at 346.

26     The EPA bears a "heavy burden of proving impossibility as a defense to non-compliance
27 with" the statutory deadline. *See Maine Ass'n of Handicapped Persons of Portland, Maine v.*
28 *Dole*, 623 F. Supp. 920, 926 (D. Me 1985); *see also Sierra Club v. Gorsuch*, 551 F. Supp. 785,

787 (N.D. Cal. 1982) (finding agency's burden in demonstrating impossibility was "especially heavy"). The EPA disagrees that it is required to demonstrate that completing the NAAQS review process in less time than it proposes would be an impossibility and, thus, does not even argue that it meets this standard. (EPA Mot. at 11.) According to the EPA as long as it completes the NAAQS process within five years of when citizens file a lawsuit contesting its failure to comply with its non-discretionary statutory duty, it need only establish a "reasonable" schedule. (*Id*.) However, the statutory time-frame does not begin when a lawsuit is filed, but began in 1980 and reoccurs every five years thereafter.[1] *See* 42 U.S.C. § 7409(d)(1); *see also American Lung Ass'n*, 884 F. Supp. at 347-48 (rejecting EPA's proposed four-year, three-month review schedule where EPA last conducted a review of the NAAQS for particulate matter seven years prior). The EPA's reliance on *Idaho Sportsmen's Coalition v. Browner*, 951 F. Supp. 962 (W.D. Wash. 1996), for the proposition that it is only obligated to demonstrate a reasonable schedule, is misplaced. Unlike the mandatory duty at issue here, the duty at issue in *Idaho Sportsmen's Coalition* was discretionary. *Id*. at 968. Moreover, the Court does not construe *Sierra Club v. Gorsuch*, 551 F. Supp. 785 (N.D. Cal. 1982) or *Sierra Club v. Thomas*, 658 F. Supp. 165 (N.D. Cal. 1987) to support the EPA's proposition either. In both *Gorsuch* and *Thomas*, the statutory deadlines at issue were relatively short (six months and two years, respectively), the plaintiffs merely sought an order requiring compliance within the statutory period, and the EPA sought to extend its time to comply by more than double the statutory period. *Gorsuch*, 551 F.Supp. at 786-87; *Thomas*, 658 F. Supp. at 170. Accordingly, the Court finds that the EPA bears the heavy burden of proving impossibility.

The Court must carefully scrutinize an agency's claims of impossibility or infeasibility. *See Gorsuch*, 551 F. Supp. at 787 (citing *National Resources Defense Council v. Train*, 510 F.2d 692, 713 (D.C. Cir. 1975)). "Excuses for delay must go beyond the general proposition that further study and analysis of materials will make final agency action better, ... because further study will always make everything better, and it is always easier to do something with

---

[1] The Court need not resolve whether the five-year period is set from 1980 and reoccurs every five years or whether the five-year period is set from the last time the EPA conducted the required review of the NAAQS.

4

more rather than less time." *American Lung Ass'n*, 884 F. Supp. at 346 (citing *Train*, 510 F.2d at 713). The EPA's burden "is especially heavy where, as here, [the EPA] has failed to demonstrate any diligence whatsoever in discharging its statutory duty ... and has in fact ignored that duty for several years." *Thomas*, 658 F. Supp. at 172. Notably, one of Congress's express purposes in enacting the Clean Air Act was to "accelerate a national research and development program to achieve the prevention and control of air pollution." 42 U.S.C. § 7401(b)(2); *see also Gorsuch*, 551 F. Supp. at 787. On the other hand, the public interest would not be served by unworkable NAAQS which would not survive judicial review. *Thomas*, 658 F. Supp. at 172. Therefore, courts should not impose an infeasible schedule upon an agency in order to punish the agency for its delinquency. *Id*.

"District courts have 'broad latitude in fashioning equitable relief when necessary to remedy an established wrong.'" *Natural Resources Defense Council v. Southwest Marine, Inc.*, 236 F.3d 985, 999-1000 (9th Cir. 2000) ("*Southwest Marine*") (quoting *Alaska Cntr. for Environment v. Browner*, 20 F.3d 981, 986 (9th Cir. 1984)). Moreover, courts have even broader and more flexible equitable powers where the public interest is involved, as opposed to when only a private controversy is at stake. *Northwest Envir. Defense Cntr v. Bonneville Power Admin.*, 477 F.3d 668, 680 (9th Cir. 2007). When, as here, an agency fails to meet a statutory deadline for a nondiscretionary duty, the court may exercise its equitable authority "to set enforceable deadlines both of an ultimate and an intermediate nature." *Train*, 510 F.2d at 705;[2]

---

[2] The EPA questions the validity of *Train* because it predates the Supreme Court's opinions in *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.*, 435 U.S. 519 (1978) and *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55 (2004). However, the holdings of *Vermont Yankee* and *Norton* are inapplicable and thus do not undermine the authority of *Train*. In *Vermont Yankee*, despite the fact that the agency employed all of the procedures required by the Administrative Procedure Act ("APA"), the court of appeal found the proceedings were inadequate and overturned the rule adopted by the agency. *Vermont Yankee*, 435 U.S. at 535. The Supreme Court criticized the lower court for devising procedures for the agency to follow rather than inquiring into the validity of the agency's exercise of its rulemaking authority. *Id*. at 544. In *Norton*, the plaintiff brought a claim under Section 706(1) of the APA, which is limited to an agency's failure to take discrete action that it is required to take. *Norton*, 542 U.S. at 64-65. In explaining the limitation of "required" action, the Court explained that "when an agency is compelled by law to act within a certain time period, but the manner of its action is left to the agency's discretion, a court can compel the agency to act, but has no power to specify what the action must be." *Id* at 65. The Court then provided the following an example of what it meant: A

5

*see also Sierra Club v. Johnson*, 444 F. Supp. 2d 46, 52-53 (D.D.C. 2006) (applying *Train* to a violation of a nondiscretionary duty under the Clean Air Act). To hold that courts could not order interim deadlines "would invite lawlessness; an agency could escape its statutory duties simply by procrastinating." *Seattle Audubon Society v. Moseley*, 798 F. Supp. 1494, 1497 (W.D. Wash. 1992).

The EPA argues that the Court lacks authority to order completion of interim tasks that are not statutorily required. According to the EPA, the only remedy the Court may issue is an order requiring the agency to comply with the ultimate deadline to review and revise, if necessary, the NAAQS for CO. (EPA Reply at 6.) However, the Court's authority is not so limited. *See Southwest Marine*, 236 F.3d at 1000. In *Southwest Marine*, the Ninth Circuit rejected a similar argument made by a defendant. The court explained that the authority to enforce a statutory requirement entails "more than the authority to declare that the requirement exists and repeat that it must be followed. So long as the district court's equitable measures are reasonably calculated to 'remedy the established wrong,' they are not an abuse of discretion." *Southwest Marine*, 236 F.3d at 1000 (quoting *Alaska Cntr. for Envir.*, 20 F.3d at 986).

Relatedly, the EPA argues that the government has not waived its sovereign immunity with respect to anything more than an injunction requiring it to comply with the ultimate deadline to review and revise, if necessary, the NAAQS for CO. However, the cases upon which the EPA relies do not stand for the proposition that when a statute authorizes an injunction against the government, the statute must specify the details of what such injunctions may entail. In *Lane v. Pena*, 518 U.S. 187 (1996), the Supreme Court merely held that a waiver of sovereign immunity for suits for damages against the government could not be implied when the statute did not expressly authorize damages against the government. *Id*. at 191-198. In *United States Dept. of Energy v. Ohio*, 503 U.S. 607, 628 (1992), the Supreme Court held that the Clean Water Act and the Resource Conservation and Recovery Act do not expressly authorize punitive fines against the government and, thus, sovereign immunity has not been

---

statute which required an agency to establish regulations within six months "would have supported a judicial decree under the APA requiring prompt issuance of regulations, but not a judicial decree setting forth the content of those regulations." *Id*.

6

waived with respect to such fines. Significantly, subsequent to *Ohio*, courts, including the Ninth Circuit, have imposed and affirmed broad injunctive relief under these environmental statutes. *See National Wildlife Fed. v. Nat'l. Marine Fisheries Serv.*, 481 F.3d 1224, 1241-43 (9th Cir. 2007) (upholding district court's order requiring regular status reports, imposing a deadline within which to conduct remand proceedings, and requiring a federal agency to provide a failure report); *see also Amer. Lung Ass'n*, 884 F. Supp. at 348-49; *Missouri Coal. for the Envir. v. United States Envir. Prot. Agency*, 2005 WL 223479, *2 n.5 (E.D. Mo. Sept. 14, 2005) (finding that the court found had considerable discretion to fashion equitable remedies and thus rejecting the EPA's argument that the court lacked jurisdiction to order such interim deadlines).

The EPA initiated the review process by issuing a call for information on September 13, 2007. *See* 72 Fed. Reg. 52,369. The EPA proposes the following schedule for the review process:

(1) prepare the draft integrated review plan, have a public comment period, and prepare the final integrated review plan by April 2008;

(2) start the integrated science assessment ("ISA") in September 2007, prepare the first draft of the ISA by June 2009, have a public comment period, prepare the second draft of the ISA by January 2010, have a public comment period, and prepare the final ISA by May 2010;

(3) start developing the scope and methods plan for the risk/exposure assessment ("RA") in October 2008, prepare the scope and methods plan by July 2009, have a public comment period, prepare the first draft of the RA by January 2010, have a public comment period, prepare the second draft of the RA by September 2010, have a public comment period, and prepare the final RA by January 2011; and

(4) start developing the advanced notice of proposed rulemaking ("ADPR") in July 2010, prepare the ADPR by February 2011, have a public comment period, publish the notice of proposed rulemaking for decisions by October 2011, publish the notice announcing and explaining the final decisions on the CO NAAQS by October 2012.

7

1  (Page Decl. at ¶¶ 54-58 and Attachment B.)

2  The Court notes that, upon examination of the review schedules for the other NAAQS
the EPA has conducted or is planning to conduct, there is flexibility in the amount of time for
each proposed phase of the review process as well as flexibility in when the different phases
begin. For example, the EPA intends to prepare the first draft of the ISA for the review of the
NAAQS for particulate matter within sixteen and a half months, whereas the EPA proposes a
twenty-three and a half month period to conduct the first draft of the ISA for the CO NAAQS.
(Charts attached to Page Decl.) The EPA proposes that it no start to develop the scope and
methods plan for the RA until thirteen and a half months after the EPA begins preparing the
first draft of the ISA, but start the scope and methods plan for the RA for other NAAQS review
within five and a half months. (*Id.*) The EPA proposes to prepare the final RA eight months
after the final ISA, but has completed or proposes to prepare the final RA at the same time or
within four months of the final ISA for other NAAQS reviews. (*Id.*) The EPA proposes to
prepare the policy assessment (or the ANPR) and the proposed and final rulemaking within
twenty-seven months, but has completed or proposed to complete the same processes for other
NAAQS reviews within as little as twelve and a half months. (*Id.*)

The EPA proposes taking a period of five years and one month from the initial call for
information to complete the review process for CO NAAQS. The EPA argues that its proposed
schedule entails the minimum amount of time needed to accomplish each task in reviewing the
NAAQS and that imposing a shorter timetable would jeopardize the integrity of any proposed
NAAQS revisions. (EPA's Mot. at 2-3 (citing Page Decl. at ¶¶ 49-65).) However, it does not
explain how the EPA has, or proposes to, complete the review process for other pollutants in
less time. The EPA also argues that the Court must consider that the EPA is engaged in
conducting other NAAQS reviews at the same time. However, this is what is contemplated and
required by the statute. Based upon a review of the evidence in the record, the Court concludes
that it would not be impossible for the EPA to complete the NAAQS review and revision
process for CO by May 13, 2011, which is forty-four months since EPA initiated the review
process by issuing a call for information.

8

Although the Court has the authority to do so, the Court is hesitant to set interim deadlines at this time. In a letter dated January 22, 2008, the Clean Air Scientific Advisory Committee ("CASAC") harshly criticized the EPA's new NAAQS review procedures. (Plaintiff's Not. of Suppl. Auth. Ex. 1.) Although the EPA touts its recently revised NAAQS review process as one that would streamline and strengthen the NAAQS review process (*see* Page Decl., ¶¶ 21-25.3), the CASAC found the ANPR for lead NAAQS "*to be entirely unsuitable and inadequate for use in rulemaking*. ..." both with respect to the timing of the ANPR within the review cycle and respect to the lack of substantive information contained within the ANPR. (*Id*., Ex. 1 at p.2 (emphasis in original).) Based on the structure and content of the ANPR the EPA prepared, the CASAC found it to be a regulatory tool more appropriately suited to the "*beginning*" of the process for reviewing a NAAQS. (*Id*. (emphasis in original).) "*The Agency's ANPR for the Lead NAAQS ... represented a remarkable weakening of the scientific foundation of the NAAQS review process.* Far from improving the efficiency of the review, the ANPR essentially *reversed* the process." (*Id*., Ex. 1 at p.3 (emphasis in original).) In light of the CASAC's recent critique, the EPA may seek to alter its current procedures. However, given how many years have passed since the EPA's mandatory deadline has expired, the Court is wary of merely providing the EPA a long-term deadline without any oversight or review. Therefore, the Court HEREBY DIRECTS the EPA to submit, by no later than July 7, 2008, a revised schedule with interim deadlines in accordance with this Order.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's motion for summary judgment and DENIES the EPA's cross-motion for summary judgment. The EPA shall have until May 13, 2011 to complete the NAAQS review and revision process for CO by May 13, 2011 as required by 42 U.S.C. § 7409(d)(1). The Court HEREBY DIRECTS the EPA to submit, by no later than July 7, 2008, a revised schedule with interim deadlines in accordance with this Order.

**IT IS SO ORDERED.**

Dated: May 5, 2008

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

9

10